Deaderick, J.,
delivered tbe opinion of tbe court:
Tn 1858, tbe Mississippi River Railway Company was incorporated by tbe legislature of this state. Tbe company organized during that year, or tbe year' following. Its projected course was through Tipton, Lauderdale, and other counties between Memphis and tbe Kentucky Hue. But little more than tbe organization of tbe company was done towards tbe construction of tbe road until after tbe termination of tbe late war between tbe states.
In August, 1866, one Abram S. Mitchell became tbe president of tbe company, and so continued until June, 1810. '
On tbe 25th of February, 1867, tbe general assembly passed an act for tbe benefit of tbe Winchester & Alabama Railroad Company, and other purposes [Private Acts 1866-67, ch. 48], tbe sixth section of which is as follows: “Be it .further enacted, that tbe county court of any county through which tbe line of tbe Mississippi River Railroad is proposed to run, a majority of the justices in commission at tbe time concurring, may make a corporate or county subscription to tbe capital stock of said railroad company, of an amount not exceeding two-thirds tbe estimated cost of grading tbe roadbed through tbe county and preparing tbe same for tbe iron rails; tbe said cost to be verified by tbe sworn statement of tbe president or chief engineer of tbe company.
“And after such subscription shall nave been entered on tbe books of tbe railroad company, either by the chairman of tbe county court or by any other member of tbe court appointed therefor, tbe court shall proceed, without further reference or delay, to levy an assessment on all tbe taxable property within the county sufficient to pay said *545 subscription, and tbe same shall be payable in three equal annual installments, commencing with the fiscal year in which said subscription shall be made. And it shall be lawful for the county courts making subscriptions as herein provided, to issue short bonds to the railroad company, in anticipation of the collection of the annual levies, if thereby construction of the work may be facilitated. And in all other respects, except as herein specially provided, the capital stock of the said railroad company, to be subscribed by counties, shall be governed by the general internal improvement laws of the state.”
And on the 5th of November, 1867, the legislature passed another act [Private Acts 1867-68, ch. 6], amend-atory of the act of 25th of February, 1867, just quoted, which is as follows: [Sec. 1] “Be it enacted . . . that the sixth section of an act passed on the 25th of February, 3867, entitled, An act for the benefit of the Winchester & Alabama Railroad Company, and for other purposes/ be, and is hereby, amended as follows, to wit: That the subscriptions authorized in said sixth section to be made to the capital stock of the Mississippi River Railroad O'o., by the counties along the line of said railroad, may be made at any monthly term of the county courts of said counties, or at any special terms of said courts; provided, that a majority of all the justices in commission in the counties, respectively, shall be present when any such subscription is made, and provided further, that a majority of those present shall concur therein.”
At the February term, 1869, of the county court of Tipton county, said Mitchell, as president of the company, presented his affidavit “that the cost of the grading and preparation of the roadbed for said railroad, through the county of Tipton, according to the estimate of the chief engineer thereof, would exceed three hundred and eighty thousand dollars.”
Thereupon, upon motion of Wm. McIntosh, justice, *546 etc., it was ordered, pursuant to tbe authority conferred upon tbe counties lying along tbe route of said railroad, by tbe act of tbe 25 th of February, 1867, tliat tbe county of Tipton, by tbe chairman of said court, be instructed to subscribe tbe sum of two hundred thousand dollars to tbe capital stock of tbe Mississippi .River Railroad Company, on tbe terms and conditions prescribed by the act of tbe legislature aforesaid, authorizing Such subscription to be made.
Tbe order made an appropriation of $200,000 for said purpose, to be paid at the rate of $40,000 annually, in bonds maturing in one, two, three, four, and five years, bearing 6 per cent, interest, payable semiannually. And tbe same order directed that, a special tax should be levied on tbe taxable property of tbe county to meet such annual appropriations. And three members of tbe court were appointed to represent tbe stock in tbe meeting of the stockholders.
At tbe July term, 1869, of said county court, tbe interest on tbe bonds was made payable annually, instead of semiannually, as by tbe order of tbe preceding February term, and a tax of 2 1-4 cents was levied upon every dollar’s worth of taxable property within tbe county to meet tbe payments upon said subscription as they fell due.
At tbe July term of 1870, of said county court, it was ordered that tbe bonds of tbe county to' said Mississiupi River Railroad Company bad been issued without a vote of tbe people, or authority of law, and no tax should be levied to pay them, and a committee was apnointed to employ counsel to resist tbe tax.
At October term, 1871, tbe said county court accepted tbe proposition of said railroad company to extend tbe time of payment of tbe bonds to ten years. This extension was proposed upon condition that tbe county court should immediately levy a tax to pay what was then due, and might thereafter become due, under tbe proposed extension *547 of time, and then tbe court levied a tax of eighty-five cents on each hundred dollars’ worth of taxable property.
At July term, 1872, the said county court levied a tax of one per cent, upon the taxable property of the county to meet said subscription.
At the. April term, 1873, the railroad company made application to the county court to issue coupons or warrants for one-half of the matured bonds, and interest, which “application was laid over until the July team of this court.”
And at the July term, 1873, the court refused to issue such coupons or warrants, and at a subsequent day of said term a tax of ten mills on the dollar was levied to meet the installment and interest falling due in the year 1873.
In the meantime, on the 22d of May, 1873, the complainants, taxpayer's of the county of Tipton, filed their bill, praying and obtaining an injunction to restrain T-Ta.n <fc Walker, the collectors of said railroad tax, from collecting the same, and asking a decree declaring the whole proceedings of the county court to be unconstitutional, illegal, and void, and enjoining all said defendants from any further attempt to collect or enforce the payment of said tax, and to order the bonds which had been issued and held by the railroad company, to be surrendered, canceled, and declared void.
The county court, the said Hall & Walker, tax collectors, and the Paducah and Memphis Railroad Company, by which name the consolidated companies of the Mississippi River Railway and Paducah and Grand Gulf Railroad were known at the time of the filing of the bill, were made defendants to the bill.
The bill charged the facts hereinbefore recited, and that the subscription of stock and levy of taxes was unauthorized, and that said county had issued bonds, which were then in possession of the defendant, the railroad company, and that the said tax collectors had collected, and were *548 still collecting, taxes under said illegal and void orders of the county court, and bad levied upon some 'of tbe property of some of tbe complainants.
It was further alleged tbat some of tbe persons acting and voting for said subscription and taxes, as members of tbe county court, were not, in fact, justices of tbe peace; were not elected by tbe people as sucia, but were assuming to act under commissions issued by ffm. G-. Brownlow, as governor, who bad no authority to' issue such commissions except to such persons as bad been elected by tbe people in the manner prescribed by the constitution.
Tbe railroad company filed its answer, and admits tbe county subscription was made as alleged, and under the authority of the acts of tbe legislature referred to in the bill, and insists tbat tbe subscription and levy of taxes and issue of bonds were valid and authorized acts of tbe county court; and if there were any irregularities in the proceedings of tbe county court, tbe new contract made by tbe order of October term, 1871, of tbe said county court; tbe payment of taxes by tbe taxpayers operated as a ratification of tbe subscription, and as an estoppel upon tbe said county and taxpayers to deny tbe validity of said subscription, and defendant insists tbat sec. 1145 of tbe Code has been complied with, so far as it has not been modified or repealed by the act of February 25th, 1867.
They also aver that railroad company has done all the law required to be done to authorize them to receive the bonds.
The answer of the company “admits that it holds some of the bonds, so issued as aforesaid, and says that other’s have been hypothecated and sold all over the country, and the proceeds used for the completion of the road, as it had the right to do; that many of the bonds are beyond its control, and their whereabouts at present is [not] within respondent’s knowledge.”
Hall & Walker answer and admit that they are collect *549 ing tie railroad taxes, and adopt- the answer of the railroad company. Tbe county court failed to answer, and a judgment pro confesso was entered against it.
At the May term, 1874, of the court, certain nonresidents of the state, were, upon their own petition setting forth that they were holders of part of the said $200,000 Tipton county bonds, allowed to be made defendants to the cause, with leave to plead, demur, or answer the bill; upon being made parties, defendants, without making any defense in any of the modes indicated in the order admitting them as defendants, at the same term, petitioned, under the act of congress, to have the cause, as to them, removed to the United States circuit court at Memphis, which was ordered to be done at the same term, and the cause as to them, was removed to said United States court.
At the May term, 1875, the complainants asked and obtained leave to file, and thereupon did file, their amended bill, alleging that they had recently discovered new facts showing the fraudulent manner in which said subscription and issimnce of bonds had been obtained and procured; that the president of the company, by influence he had with the governor, prevented justices-elect from being commissioned, and procured him to commission certain persons as justices of the peace who were not elected, and were commissioned upon the promise to vote for said subscription; that other's were influenced by bribery, and other corrupt means, to vote for the subscription, although they knew the people were opposed to it.
The order allowing this amended bill -to be filed allows the defendants to the June rules to answer it. It then proceeds as follows: “And the defendant, the Paducah and Memphis Railroad Company, is allowed in its said answer to said amended bill, to incorporate therein, as by way of amended or supplemental answer (or either, as the case may be) to its answer thereinbefore filed to the original bill of *550 complainants, any matter of disclaimer of interest in tbe subject-matter of this suit, of course.”
The railroad company filed its answer to the amended bill, and after a very explicit denial of the several charges of fraud, bribery, and corruption, says “that while, in its answer to said original bill, hereinbefore filed, it admitted that it held some aforesaid bonds, yet now it is the owner' and holder of none of said bonds, and has no interest in this cause whatever, for respondent states, that as above related, when said bonds were taken by it and redeemed, that then it again issued said bonds on the faith of said ratification of said county court, at its October term, 1871, and other terms, and obtained moneys used in the building of said road as aforesaid, and said bonds then, and before the filing of said bills, passed into the hands of other holders for value. And now this respondent disclaims all and any interest in and because of any of the matters and things complained of in complainant’s said bills.”
This answer was filed the 5th of July, 1875, and at the August term of the court next thereafter’, the said defendant filed a formal plea of disclaimer by leave of the court, complainants excepting to the action of the court in granting leave to file said plea, and the defendants, Hall & Walker, answered, and accompanied their answer with a plea of want of necessary and proper parties.
Upon the said answers and pleas and judgments pro confesso against the county court, and facts admitted, and affidavits treated as depositions by agreement with the county court, the circuit judge who presided in the place of Chancellor Livingston, who was incompetent to try the cause, heard and determined the cause, holding the acts of the 25th of February, 1867, and the 5th of November, 1867, to be unconstitutional, and the subscription of stock by the county court unauthorized and void, as well as those orders directing the levy of taxes and issuance of bonds to said railroad company, and also all orders passed subsequently in ratification of previous orders.
*551 The court also adjudged and declared that the passage of the aforesaid acts of assembly of 25th of February, and 5th of November, 1867, the subscription of stock and issuance of bonds, were procured by fraud of said railroad company, and for t-his reason also adjudge the proceedings of the county court to be void.
The injunction restraining the county court from levying, and Hall & Walker from the collection of taxes was made perpetual.
But the court was of opinion, and so decreed, that no decree could be rendered against the railroad company upon its answer and plea of disclaimer, and dismissed the bill as to said company, with costs.
No other relief against Iiall & Walker was granted than perpetuating the injunction inhibiting the collection of taxes, and giving costs against the county.
The complainants and the county court have appealed, and Hall & Walker have filed the record as a writ of error.
The pleadings and facts, present several questions of interest.
1. Had the county court, under the acts of February and November, 1867, or any other, the power to' make the subscription of stock to the railroad company, to issue bonds to them, and levy a tax for their payment.
The act of 1852, Code, sec. 114-2 et seq., is a general law of the land, giving power to all counties, cities, and towns, upon special conditions, to make such subscriptions, which has been held by this court to be a constitutional enactment, 1 Sneed, 637, holding the construction of a railroad through a county to be a county purpose, within the meaning of art. 2, sec. 29, of the constitution of 1834, which ordains that "the general assembly shall have power to authorize the several counties and incorporated towns in the state to impose taxes for county purposes, respectively, in such manner as'may be prescribed by law.”
In the case'already cited, it is said, in construing the *552 foregoing section of the constitution, that tlx© power to' be conferred by the legislature to impose taxes, for county purposes, is to be communicated to the counties, not to the courts, nor to justices, nor to the officers; that the mode of its exercise is left to the discretion of the legislature. 1 Sneed, 677.
Code, sec. 1142, provides that any county may subscribe for stock in railroads, and subsequent sections define and describe the mode, conditions, and’ instrumentalities by which the subscription may be effectuated. The fundamental and indispensable condition is that the approbation of the legal voters of the county must first be obtained by an election held by the sheriff, as in other cases of popular elections. In order that this vote may be taken, the county court may order an election, upon application of the commissioners appointed to open books for subscription of stock in such road, or of the board of directors, if the company is organized, if a majority of the legal 'Voters should vote for subscription; and the judge or chairman of the county court shall subscribe the amount of stock so voted for, in the name of the county, and it shall be the duty .of the county court to levy a tax to meet the installments of subscriptions as made, etc.
These duties imposed by the act of 1852 upon the county court were held to be ministerial only. No. power to levy a tax, appropriate money, or contract a debt, nor any quasi legislative or judicial power is given. All this is referred to the people. Every duty required to be performed by the county court is merely instrumental or ministerial, the court acting under the mandate of the law in carrying out the will of the people. 1 Sneed, 680-1. It was therefore held that this ministerial duty might be performed by the quorum of the court. But the case cited gives no countenance to the idea that the subscription of stock in a railroad company by the quorum or quarterly court would be valid without popular sanction, obtained in the mode prescribed by the statute.
*553 Art. 1, sec. 8, of tbe constitution of 1834, provided tbat no freeman, etc., shall be deprived of bis property but by tbe judgment of his peers or tbe law of the land, and the term, “law of tbe land” has been repeatedly defined by our courts to mean a general and public law, operating equally upon every member of tbe community. And art. 11, par. 7, of that instrument provided tbat “tbe legislature shall have no power to suspend any general law for tbe benefit of any particular individual, nor to pass any law for tbe benefit of individuals inconsistent with tbe general laws of tbe land; nor to pass any laws granting to any individual or individuals, rights, privileges, immunities, or exemptions, other than such as may be, by tbe same law, extended to any member of the community who may be able to bring himself within the provisions of such law.”
In view of what has already been said of tbe act of 1851-2 as a law of tbe land, it is scarcely necessary to do more than to read tbe acts of February 25th, and 5th of November, 1867, to be satisfied of their unconstitutionality.
Without discussion of tbe exceptions and objections taken to the validity of said acts upon tbe ground of corrupt devices employed to procure their passage, nor the alleged bribery to obtain tbe votes of tbe county court in levying a tax as well as in procuring the subscription to be made, tbe total want of power to do such acts by the county courts are decisive against tbe validity of tbe subscription and all tbe subsequent acts and orders making provisions to pay it.
Tbe general railroad law made tbe subscription of stock wholly dependent upon tbe vote of tbe people. Tbe acts procured to be passed by tbe legislature, in 1867, in tbe interest of the Mississippi Bailroad Company, dispensed with this vital requirement, and upon tbe face of tbe act of February 25 th, it is shown tbat tbe legislature intended to exempt this particular company from tbe operations of tbe law of tbe land. For tbe conclusion of tbe sixth see *554 tion is in these words: “And in all other respects as herein specially provided, the capital stock of said railroad company to be subscribed by the counties shall be governed by the general internal impovement laws of the state.”
The exceptions specially provided in this special act in favor of the Mississippi Railroad Company was dispensing with the popular vote, which the general law required, and some other differences of minor importance. [See others in dissenting opinion of Judge Turney, in Lauderdale Co. v. Fargason, 7 Lea, 169-172].
The acts of February 25th and November 5th, 1867, are in conflict with the general improvement act of 1851-2, and repugnant to the two sections of the constitution of 1834, above cited, and are therefore utterly null and void.
The county court, never having had any authority to make the subscription of stock, nor to levy taxes for its payment, could not, of course, ratify its own void acts, having no more power to ratify than it had to perform the original unauthorized acts.
Nor has there been any such approval or acquiescence on the part of the taxpayers as estops them from contesting the validity of the acts of the county court.
Tt has been very earnestly and plausibly argued that the court below had no authority to pronounce a decree declaring the invalidity of the subscription of stock, and the illegality of the. levy of taxes because of the want of proper parties in the cause.
The argument is, that part of the bonds issued are in the hands of innocent holders, who are necessarily affected by the decree, and .that they are necessary parties, and not being parties, no decree can be pronounced which declares the several acts of the county court invalid and the issuance of the bonds unauthorized.
It is a genera] rule iu equity, subject, however, to some exceptions, that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are *555 to be made parties to it, either as plaintiffs or defendants, so that there may be a complete decree that shall bind them all, thus preventing future litigation and a multiplicity of suits. Sto. Eq. Pl., sec. 72; 1 Dan. Ch. Pl. & Pr., 181-2.
A person may be affected by the demands of a complainant in equity, either immediately or consequentially, where he is in possession of the subject-matter of the suit, or has an interest in it, in possession or in ecspectancy, he has such an immediate or indirect interest as makes him a necessary party to the suit. But persons not directly or immediately interested in resisting complainants’ demands are yet liable to be affected by them consequentially, because complainants’ success against defendants may give the defendants a right by action against them; such persons, therefore, as being consequentially liable to bei affected by the suit, must frequently also be made parties to it. 1 Dan. Ch. Pl. & Pr., 238-9.
To the general rule that all persons who are interested in the object of the bill are necessary and proper parties, there are exceptions, and as the rule is founded upon public conscience and policy, courts of equity will not suffer it to be so applied as to defeat the purposes of justice if they can dispose of the merits of the case before them without prejudice to others who are not parties, or if the circumstances of the case render the application of the rule wholly impracticable. Sto. Eq. PL, 77. If a party be out of the jurisdiction, it is a sufficient ground for dispensing with his being made a party, and the eout may proceed to decree on the questions between the parties who- are before the court if no decree is rendered against such absent persons, even though such decree may incidentally question or touch upon their rights. Sto-. Eq. P., 78, 82. See also Ibid., see. 135a.
In this case no decree was sought or rendered against the holders of the bonds. They had been made parties *556 defendants in tlie cause upon tbeir own petition, and tben, by tbeir' own voluntary act, under tbe provisions of tbe act of congress for tbe removal of causes from tbe- state courts to federal courts, bad tbe cause removed, as to tbem, lo tbe United States circuit court at Memphis. And, although at tbe time of such removal, tbe court below bad jurisdiction of tbem and tbeir rights in tbe cause, they elected to defeat such jurisdiction, and by tbeir own voluntary act, made it impracticable for tbe state court to render a decree either for or against tbem.
But tbe state court bad obtained jurisdiction of tbe other parties, and still retained it, and tbe right to adjudicate tbe questions raised by the pleadings as between tbe parties to this suit. Nor can tbe voluntary withdrawal of tbe bondholders be allowed to defeat tbe jurisdiction of this court to render such decree without prejudice to persons having an incidental interest as between tbe remaining parties to this cause.
Tbe effect of tbe amended or supplemental answer of the Paducah and Memphis Kailroad Company, and of their disclaimer of interest in tbe subject-matter of the suit therein, and of tbe formal plea of disclaimer of such interest, has also been fully discussed.
A plea of disclaimer is tbe form of answer put in by a defendant, where the bill charges that such defendant claims an interest in property in dispute. If tbe defendant denies that be has, or claims any right, to tbe thing demanded by tbe complainants’ bill, be may disclaim or renounce all claim thereto. But a disclaimer cannot be employed to shield a party from a liability charged in tbe bill, nor shelter him from answering by disclaiming any interest in the matter of suit. In cases where others may have an interest in it against him, be cannot disclaim bis liability. 1 Danl. Cb. PI. & Pr., 787 et seq.; Sto. Eq. PL, par. 838 et seq.
Tbe bill charges that the railroad company bad in its *557 possession at tbe time of tbe filing thereof, some of tbe bonds of tbe county of Tipton, which complainant's prayed might be surrendered up to be canceled. And if tbe facts were so charged, a case for relief against tbe company was made by tbe bill, which could not be defeated by a plea of disclaimer of interest in tbe subject-matter of tbe suit.
Tbe court, below, upon its application, granted to tbe said railroad company leave to file an amended or supplemental answer,. without any disclosure of tbe nature or extent of the proposed amendment, further than that tbe leave extended to “any matter of disclaimer of interest,” etc. This leave was granted without any affidavit showing grounds for tbe amendment. But tbe leave was granted, and tbe amended or srrpplemental answer was filed without any objection thereto being made. That amendment denies tbe charge in tbe bill that respondent bad any of tbe bonds at t-he time of tbe fifing of said complainants’ bill, or afterwards. Admits that it bad some before tbe fifing of tbe bill, but that they were disposed of by it before tbe fifing of tbe bill, and, although tbe explanation of its former answer, admitting that it bad held some of the bonds, is not very satisfactory, in tbe amended answer, yet it was filed and was unexcepted to> and explicitly denies tbe allegations of tbe bill. No objection having been taken to fifing of tbe amended answer, we cannot now bold that it was improperly allowed, or that its averments and denials are to be disregarded.
Treating tbe amended answer as properly filed, and operating in its denial of tbe possession of any of tbe bonds of the county, as charging tbe admissions contained in the original answer, we affirm tbe decree below dismissing the bill as to said railroad company, not, however, upon tbe ground of its disclaimer of interest, but upon tbe ground of its denial of tbe charge of having bonds of tbe county at tbe time of tbe fifing of tbe bill, there being no evidence whatever to contradict this denial of tbe answer.
*558 The judgment is that the decree of the court below will be affirmed, and the costs of this cout and the court below will be paid by the county of Tipton.