ROBERT IMBODEN *et al. v.* CITY OF BRISTOL *et al.*

(*Knoxville.*   September Term, 1915.)

1. **MUNICIPAL CORPORATIONS.   Issue of bonds.**

Where the credit of a city is to be used for a proper city purpose, bonds may be issued, if due authority is given by the legislature, without a submission of the matter to a vote of the people. (*Post, pp.* 564-567.)

Acts cited and construed:   Acts 1913, ch. 18.

Cases cited and approved:   Arnold v. Knoxville, 115 Tenn., 195; State ex rel. v. Powers, 124 Tenn., 556; Shelby County v. Exposition Co., 96 Tenn., 653; Colburn v. Railroad, 94 Tenn., 43.

Constitution cited and construed:   Art. 2, sec. 29.

2. **MUNICIPAL CORPORATIONS.   Street improvements.   Bonds.**

Const., art. 2, sec. 29, declares that the credit of no county, city, or town shall be given in aid of any person, association, or corporation except upon an election first held by the qualified voters.   Priv. Acts 1913 (1st Ex. Sess.), ch. 18, authorized the city of Bristol to improve streets and issue bonds to pay for the improvement; the bonds to be the absolute and general obligations of the municipality.   The act further provided for the payment of two-thirds of the cost by abutting property owners, and they were allowed five years to complete payments.   *Held* that, though the abutting property owners received a peculiar benefit and were specially assessed for it, yet, the improvement of the streets being for the benefit of the city and its inhabitants, the issuance of bonds for payment of the entire work was not a pledge of the city's credit for the benefit of such abutting owners.   (*Post, pp.* 564-567.)

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County.
—HAL H. HAYNES, Chancellor.

HARR & BURROW, for appellants.

C. J. ST. JOHN, for appellees.

MR. JUSTICE GREEN delivered the opinion of the
Court.

This bill was filed by residents and taxpayers of the
city of Bristol to enjoin the issuance of certain bonds
about to be negotiated by the city in connection with
street improvement work.   The bonds were authorized
by chapter 18, Acts of the First Extra Session of the
legislature of 1913—a front foot assessment act.   The
bill challenges the constitutionality of this act.   A de-
murrer was interposed by the city and sustained by the
chancellor, and from this decree complainants have ap-
pealed.

The act in question is not materially different from
other statutes of this State providing for special as-
sessments for local improvements, and, among other
things, it provides that two-thirds of the cost of the
work shall be borne by the abutting owners and one-
third by the city.   It authorizes the city to issue bonds
to pay for the part of the work charged to the abutting
owners, and provides that the city shall be repaid by
assessments levied on the adjacent property to be dis-
charged by the property owners, at their option, in
five annual payments.

It is said that the last-mentioned provision of the act violates section 29, art. 2, of the Constitution, as follows:

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, . . . association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election."

The argument against the validity of the statute is founded on one of the reasons given in our cases justifying special assessments. It is said in these cases that the justification for special assessments for local improvements is that property contiguous to such improvements receives a peculiar benefit not shared by property elsewhere located. So the cost of the improvement may be assessed in proportion to benefits conferred, and is not required to be imposed on the whole body of property or taxpayers equally. *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881; *State ex rel.* v. *Powers,* 124 Tenn., 556, 137 S. W., 1110.

Taking this statement of the law as a basis, it is argued that such improvements are for the benefit of adjacent property owners, that bonds issued to pay for such improvements are in aid of such property owners, and therefore the issuance of such bonds is a giving or lending the city's credit in aid of such parties in violation of the section of the constitution quoted.

It should be observed that chapter 18 of the Acts of the First Extra Session of 1913 provides that the bonds here in controversy shall be "the absolute and general obligations of the municipality."

It is conceded that improvement of its streets within its borders is a proper corporation purpose, and with legislative authority any municipality may issue its bonds for such a purpose. Where the credit of a city or a county is to be used for a proper county or corporation purpose, if due authority is given by the legislature, bonds may be issued by the city or county for such purposes without a submission of the matter to a vote of the people. *Shelby County* v. *Exposition Co.,* 96 Tenn., 653, 36 S. W., 694, 33 L. R. A., 717; *State ex rel.* v. *Powers,* 124 Tenn., 553, 137 S. W., 1110, and cases cited.

Although the improvement of a particular street may confer a peculiar benefit upon the property owners along that street—so peculiar, indeed, as to justify a special assessment upon them—the improvement is none the less a public improvement. In this case the expenditure is to be made on the city's own easement, its street, of which it had, and retains, control, and of which all its citizens have the benefit.

If a municipality could be restrained in the execution of a proper corporation purpose because some of its citizens would derive special advantage therefrom, many of its enterprises would fail. Parks, schools, bridges, and numerous other public works benefit chiefly the immediate section in which they are located.

It cannot be said that a municipal improvement falls short of a corporate purpose because all its benefits are not, in fact, enjoyed by all the citizens in the same degree.

The improvement of a city's streets is an improvement of a public nature, an improvement of the city's own property, the enjoyment of which is not confined to adjacent property owners. That adjacent owners derive special advantage therefrom sufficient to justify the levy of a special assessment upon them does not alter the case. The work is still of a public character, and expenditures for the same are expenditures for a corporation purpose.

To deny the public character or the corporate purpose of work accomplished by local assessments would be to deny the power of a municipality to execute such an undertaking at all. Unless such work were for the public benefit or for a corporation purpose, citizens could not be required to submit to assessments on account thereof. The property of adjacent owners could not be so burdened against their will, however much it might be improved or enhanced in value.

So we must conclude that the prosecution of this improvement work on its streets by the city of Bristol is for the benefit of the public, and that the use of the credit of the city for such work is for a legitimate corporation purpose, notwithstanding the fact that some property owners will be specially benefited.

The case of *Colburn* v. *Railroad,* 94 Tenn., 43, 28 S. W., 298, in no sense conflicts with the views herein ex-

Imboden v. City of Bristol.

pressed.   In that case the county undertook to use its credit, as the court pointed out, for the purpose of becoming a stockholder and joint owner with the railroad company in proposed improvements.   In this case the city of Bristol proposes to use its credit for the improvement of its own streets, of which it has exclusive control.

The chancellor correctly sustained the city's demurrer, and his decree will be affirmed, with costs.