C. R. Berry *v.* Shelby County *et al.*

(*Jackson.*    April Term, 1918.)

1. **COUNTIES. Bonds. Validity.**

Priv. Acts 1917, chapters 295, 479, authorizing Shelby county to
aid Bolton College by issuing bonds and levying a tax to pay
therefor, violates Constitution 1870, article 2, section 29, provid-
ing that a county's credit shall not be given in aid of any per-
son, etc., unless such action be authorized by a three-fourths
vote at an election held for that purpose. (*Post, pp.* 538-542.)

Acts cited and construed: Priv. Acts 1917, chs. 295, 479.

Cases cited and approved: Nichol v. Nashville, 28 Tenn., 252; L.
& N. R. R. Co. v. Davidson County, 33 Tenn., 637; Winston v.
T. & P. R. R. Co., 60 Tenn., 60; Lauderdale County v. Fargason,
75 Tenn., 155; City of Memphis v. Gayoso Gas Co., 56 Tenn.,
531; University v. Knoxville, 65 Tenn., 166; Luehrman v. Taxing
District, 70 Tenn., 425; Williams v. Taxing District, 84 Tenn.,
531; Demoville v. Davidson County, 87 Tenn., 214; State ex rel.
v. Cummings, 130 Tenn., 566; Quinn v. Hester, 135 Tenn., 373;
Waterhouse v. Board, 55 Tenn., 857; Ballentine v. Mayor, 83
Tenn., 633; Smith v. Carter, 131 Tenn., 1; Wallace v. Tipton Co.,
3 Shan. Cas., 542; Winston v. Railroad, 60 Tenn., 60; McCallie
v. Chattanooga, 40 Tenn., 317; Shelby County v. Judges, 3 Shan.
Cas., 508; Shelby County v. Exposition Co., 96 Tenn., 659; Bur-
nett v. Maloney, 97 Tenn., 697; State ex rel. v. Powers, 124
Tenn., 553; In re Forked Deer Drainage District, 133 Tenn., 684;
State ex rel. v. Brown, 132 Tenn., 685; Ransom v. Rutherford
Co., 123 Tenn., 25; Shelby County v. Jarnigan, 3 Shan. Cas., 184;
Wallace v. County Court, 3 Shan. Cas., 542; University v. Knox-
ville, 65 Tenn., 166; City of Memphis v. Memphis Gayoso Gas
Co., 56 Tenn., 531; Newman v. Ashe, 68 Tenn., 380; Ballentine
v. Pulaski, 83 Tenn., 644; Imboden v. City of Bristol, 132 Tenn.,
562.

Constitution cited and construed: Sec. 29, art. 2.

Berry v. Shelby County.

2. **MUNICIPAL CORPORATIONS. Bond issues. Validity.**
Under Constitution 1870, article 2, section 29, providing that the
legislature may authorize municipalities to tax for county and
corporate purposes in such manner as shall be prescribed by law,
but that a municipality's credit shall not be pledged in aid of
any person, etc., unless such action be authorized at an election,
no election is necessary where the municipality directly taxes
for a direct public purpose unless the statute specifically so re-
quires. (*Post, pp.* 543, 544.)

Case cited and approved: Colburne v. Railroad, 94 Tenn., 43.

3. **MUNICIPAL CORPORATIONS. Bond issues. Validity.**
Under Constitution 1870, article 2, section 29, providing that a
municipality's credit shall not be given or loaned unless such
action be approved at an election, the statute authorizing the
loan of credit must provide for the election. (*Post, pp.* 544-546.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.
—F. H. HEISKELL, Chancellor.

R. LEE BARTELS, for appellant.

CARUTHERS EWING, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of
the Court.

The bill was filed by a taxpayer of Shelby county,
in behalf of himself and all other taxpayers to have
declared void $150,000 of bonds which the county was
about to issue, under chapters 295 and 479 of the so-

called Private Acts of 1917, and certain orders of the county court based on these two acts. The ground of attack is that the bonds were to be issued in aid of Bolton College without the submission of the proposition to the people of Shelby county for a vote thereon, pursuant to the second paragraph of section 29 of article 2 of the Constitution of 1870. The chancellor dismissed the bill, and the complainant has appealed. On application the cause was advanced for hearing at the present term as being a matter of public interest.

Chapter 295 is entitled: "An act to authorize Shelby county to aid Bolton College by the issuance of $150,000 in bonds, to levy a tax for the benefit of said school, and to secure the payment of the bonds and the interest thereon."

The act recited in its first section that its purpose was to raise means necessary to erect buildings upon the property of Bolton College, and to purchase necessary equipment therefor. It further provided that Bolton College should execute a trust deed on all its real estate, together with improvements thereon, and that this trust deed was to secure the payment of these bonds to be issued by Shelby county; that the bonds and coupons should not create any general liability against Shelby county, but the holders should look solely to the security of the trust deed. The next section gave to Shelby county the right to levy a special Bolton College tax annually so long as the bonds should remain outstanding, and provided that

the sum so realized should be expended solely for the purpose of paying interest upon the bonds and to create a sinking fund, ''and for the purpose of aiding and keeping up Bolton College as an institution of learning for which it is designed.'' The third section provided that the proceeds derived from the sale of the bonds should be turned over to the trustees of Bolton College to be expended by them solely for the erection of proper and necessary buildings upon the real estate of the college. This section also provided that the proceeds of the annual tax authorized to be levied should be paid over to the trustees of the college to be administered by them for the benefit thereof.

Chapter 479 amended section 2 of the act just referred to by adding at the end of that section the following:

''Provided, that in case Shelby county shall issue said bonds, then it shall be the duty of the county to levy a sufficient tax each year to provide for the payment of the interest on the bonds, and to provide a sinking fund, so long as any of said bonds are outstanding, and this duty is made mandatory on the county.''

Pursuant to these two acts the county court of Shelby county entered upon its minutes certain orders directing that $150,000 of bonds should be executed by the county in aid of Bolton College, and should be sold and the proceeds turned over to the trustees of the college. Accordingly the bonds were prepared and a

bid was obtained upon them, which the county deemed satisfactory. At this point the bill was filed enjoining the issuance of the bonds.

Neither the original act nor the amended act provided for a submission of the proposition to a vote of the people.

Bolton College is an institution of learning arising out of the will of Wade Bolton. He died about the year 1869, and left three hundred acres of land and a considerable sum of money for the erection and financing of an institution of learning for the benefit of the poor and orphan white children of the First civil district of Shelby county. In the course of time the management of the trust fell into the hands of the chancery court of Shelby county, where it has rested for many years. Buildings have been erected upon the property, and a school has been conducted there for a long time. The chancellor directed that the charity be incorporated, and this was done, but the trustees of that date are all dead, and it does not appear that the corporate functions have since been used, the school acting, as stated, practically always under the direction of the chancellor.

About the year 1910 the board of education of Shelby county began to take an interest in the college. Through the efforts of that body an agricultural school was established at Bolton College, and the county aided it for a term of two years by a tax of one cent on each $100 of all the taxable wealth of Shelby county. This was continued for another two

years, and is still in existence, having been renewed from time to time for two-year terms. Later a plan was developed between the trustees of Bolton College and the board of education of Shelby county whereby a grammar school was established at the college covering the first seven grades of the common school curriculum of Shelby county. This school is under the sole control of the authorities of Bolton College. They select the teachers and conduct the school, but under the agreement these teachers are required to attend regular institutes that the public school teachers of the county attend, and they are required to be approved by the superintendent of public instruction of Shelby county. In addition the board of education of Shelby county contributes liberally to the salaries of the teachers. It was part of the agreement, however, that the arrangement could be terminated by either side on six months' notice. This was the *status* of affairs when the plan was developed for issuing the bonds to enlarge the usefulness of Bolton College. Dormitories were needed, it was believed, in order to accommodate the increased attendance that was expected. We do not doubt that the trustees of Bolton College, the county court, and the board of education of Shelby county were all actuated by a high purpose. They all believed that this fund of $150,000 was needed to raise Bolton College to the position wherein it would be most serviceable to the cause of education. No one can doubt the high public spirit which prompted the enterprise,

but beyond doubt we are bound to decide against it on constitutional grounds.

We are of the opinion that the two legislative acts referred to are void, because they are in violation of the second paragraph of article 2, section 29, of our Constitution of 1870, since they attempt to authorize one of the counties of this State without a preliminary popular election to lend its aid to an entity distinct from itself, by the issuance of bonds to be paid by taxes assessed upon, and collected from, the property of the citizens of the county. The result is the same whether Bolton College be regarded as a corporation, or simply as a charitable organization represented by trustees acting at all times under the direction of the chancery court of the county.

The section of the Constitution referred to reads: "Sec. 29. The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation.

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county,

city or town, become a stockholder with others in
any company, association or corporation except upon
a like election, and the assent of a like majority.''

The first paragraph was the same in the Constitution
of 1834.   The second originated with the Constitution
of 1870.

Many of our cases on the general subject were
either decided before the adoption of the Constitution
of 1870 or, if decided afterwards, were based upon
facts arising before that time, and so were decided
under the Constitution of 1834, that is, under the first
paragraph quoted supra.   Among these cases are
the following: *Nichol* v. *Nashville,* 9 Humph. (28
Tenn.), 252; *L. & N. R. R. Co.* v. *Davidson County,*
1 Sneed (33 Tenn.), 637, 62 Am. Dec., 424; *Winston*
v. *T. & P. R. R. Co.,* 1 Baxt. (60 Tenn.), 60; *Lauder-*
*dale County* v. *Fargason,* 7 Lea (75 Tenn.), 155; *City*
*of Memphis* v. *Gayoso Gas Co.,* 9 Heisk. (56 Tenn.),
531; *University* v. *Knoxville,* 6 Baxt. (65 Tenn.), 166.
In applying these cases it is important to bear this
fact in mind, so that we may not confuse the act of
1852 carried into the Code of 1858, providing a method
by which the popular will might be ascertained on a
proposition for granting aid by a subscription to stock,
or in other forms, with the positive requirement of the
Constitution of 1870 that a popular vote of approval
shall be essential to the loan or other aid granted to a
corporation, company, association, or other person.
The propriety of this suggestion is illustrated by the
case of *Lauderdale Co.* v. *Fargason,* supra, wherein it

was held that, notwithstanding the act of 1852 the legislature might authorize a county to lend its aid to a railway corporation without a submission of the matter to a vote of the people. The same rule was applied, although not expressly referred to, in *City of Memphis* v. *Gas Co.*, supra. After the adoption of the Constitution of 1870 this could not be done.

So it is that, although the legislature may itself, without the intervention of county or municipal authorities, levy taxes directly for the support of such county or municipal corporation (*Luehrman* v. *Taxing District*, 2 Lea [70 Tenn.], 425, 441-445; *Williams* v. *Taxing District*, 16 Lea [84 Tenn.], 531, 536, 538; *Demoville* v. *Davidson County*, 3 Pickle [87 Tenn.], 214, 224, 10 S. W., 353; *State ex rel.* v. *Cummings*, 3 Thompson [130 Tenn.], 566, 569, 573, 172 S. W., 290, L. R. A., 1915D, 274; *Quinn* v. *Hester*, 135 Tenn., 373, 186 S. W., 459), yet it cannot authorize such county or municipal corporation, and to these only can it delegate the taxing power (*Waterhouse* v. *Board*, 8 Heisk. [55 Tenn.], 857; *Ballentine* v. *Mayor*, 15 Lea [83 Tenn.], 633, 639; *Luehrman* v. *Taxing District*, supra; *Smith* v. *Carter*, 131 Tenn., 1, 7, 173 S. W., 430), to lend its aid by taxation to any corporation, company, association, or person, or to subscribe for stock in or with any such body or person, unless it also authorizes the submission of the matter to a vote of the people, and unless such vote be had approving by a three-fourths majority such lending of aid or subscription for stock, thus complying with the act author-

izing the election (*Railroad* v. *Davidson Co.*, supra; *Wallace* v. *Tipton Co.*, 3 Shan. Cas., 542, 552; *Winston* v. *Railroad*, 1 Baxt. [60 Tenn.], 60, 76).

Furthermore, such lending of aid or subscription of stock must be for a county or corporation purpose, under the express terms of the constitutional provision quoted; and Mr. Justice TURLEY, in *Nichol* v. *Nashville*, supra, suggested that this would be true even without a formal requirement of the Constitution. However, such is the positive requirement.

As to what is a county or corporation purpose our cases declare that this is incapable of an exact and all-inclusive definition, and that each case must turn on its own facts. *Nichol* v. *Nashville*, supra; *McCallie* v. *Chattanooga*, 3 Head (40 Tenn.), 317, 321; *Shelby County* v. *Judges*, 3 Shan. Cas., 508, 512, 513, 518, 521, 522; *Shelby County* v. *Exposition Co.*, 12 Pickle (96 Tenn.), 659, 36 S. W., 694, 33 L. R. A., 717. Some illustrations from our cases will indicate the general views of the court on the subject: A county bridge is a county purpose, *Burnett* v. *Maloney*, 13 Pickle (97 Tenn.), 697, 37 S. W., 689, 34 L. R. A., 541; an exhibit of the county's resources at an exhibition of the resources of the State, *Shelby County* v. *Exposition Co.*, 12 Pickle (96 Tenn.), 653, 659-661, 36 S. W., 694, 33 L. R. A., 717; a drainage district, *State ex rel.* v. *Powers*, 16 Cates (124 Tenn.), 553, 137 S. W., 1110; *In re Forked Deer Drainage District*, 133 Tenn., 684, 182 S. W., 237; juvenile courts, *State ex rel.* v. *Brown*, 132 Tenn., 685, 690, 179 S. W., 321; public

schools, *Ransom* v. *Rutherford Co.,* 15 Cates (123 Tenn.), 25, 30, 31, 130 S. W., 1057, Ann. Cas., 1912B, 1356; the construction of a railroad into a county, *Railroad* v. *Davidson County,* supra; *Shelby County* v. *Jarnigan,* 3 Shan. Cas., 184; *Wallace* v. *County Court,* 3 Shan. Cas., 542; *Winston* v. *Railroad,* supra.

Each one of the following has been approved as a municipal corporation purpose: A public library, *University* v. *Knoxville,* 6 Baxt. (65 Tenn.), 166; subscription for the lighting of the city, *City of Memphis* v. *Memphis Gayoso Gas Co.,* 9 Heisk. (56 Tenn.), 531; waterworks, *Newman* v. *Ashe,* 9 Baxt. (68 Tenn.), 380, 381-383; public schools, *Ballentine* v. *Pulaski,* 15 Lea (83 Tenn.), 644; the improvement of the streets of a city, *Imboden* v. *City of Bristol,* 132 Tenn., 562, 179 S. W., 147; the building of a railroad into or near a city, *Nichol* v. *Nashville,* supra; *McCallie* v. *Chattanooga,* supra.

The cases illustrating a county purpose and those illustrating a municipal corporation purpose are mutually helpful.

It is perceived that some of the purposes are direct; as public bridges, public schools, waterworks, gasworks, and some others catalogued in the list just given, whilst others, as the construction of a railroad into a county, or into or near a city, are indirect. The former promote directly the welfare of the county or city, while the latter effect this result only in an incidental way, in the increase of the value of lands, the improvement of trade and commerce, and the like.

Where the purpose is direct, and is accomplished by direct action of the county or city, as in building, or employing others to build for it, the county's bridge, or the city's waterworks, to be owned by the county or city, the matter falls under the first paragraph of section 29 of article 2, quoted supra, and the legislature need not require an election; the tax being valid without it. *Lauderdale County* v. *Fargason,* supra. However, it can provide that such election be had, under the clause reading, "in such manner as shall be prescribed by law." In such event the provision must be complied with.

But even a direct purpose may be made effective through the device of the county's or the city's lending its credit to some other corporation, company, association, or person, or by subscribing stock therein. In that event the case falls within the second paragraph of the section of the Constitution quoted. This is illustrated by the case of *Colburne* v. *Railroad,* 94 Tenn., 43, 28 S. W., 298. There it appeared the county of Hamilton, through its county court, entered into a contract with a railroad company to unite with it in the building of a public county bridge, the lower part to be used by the railroad company, and the upper part, or upper story, so to speak, to be used by the county. There was a special act purporting to authorize the contract, but this act did not provide for a submission of the matter to a vote of the people, and there was no such submission. The court held that for this reason the contract was void; that it consti-

tuted a lending of the credit of the county to the railroad company, and, though for an undoubted county purpose, which the county by its own individual efforts, a county bridge, might have rendered effectual, yet it could not unite with another in such an enterprise without the sanction of a popular vote under the second paragraph of section 29, supra.

The illustration is an apt one in respect of the case before us. Public schools are a county purpose, and the county may be authorized to levy taxes directly for them, to be appropriated directly to their support, without the necessity of a popular vote. This would fall under the first paragraph of section 29. But if the county, instead of applying its taxes directly to its public schools, desires to lend its aid to some other educational institution, as in the case before us, engaged in substantially the same work, that is, educating and training the young people or children of the county, that desire can be rendered effectual, and its fruition secured, only by an act of the legislature authorizing it, and the approval of a three-fourths majority obtained by a popular vote thereon. Whether the statute must provide for a submission to the people, or whether the vote may be taken without the act's requiring it, has not been heretofore decided. Mr. Justice WILKES, in the case just cited, in a *dictum*, inclined to the latter view. Mr. Justice CALDWELL, in the later case of *Shelby County v. Exposition Co.*, supra, likewise in a *dictum*, expressed the very decided opinion that the act must provide for the

election.  We think the latter view is correct.  An election cannot be held unless its holding be directed by law.  The Constitution does not order it.  It only makes the election a condition of the validity of the lending of the aid of the county or city.  It seems clear that the act authorizing the lending of credit should provide for the election; otherwise it is fatally incomplete and is void.

Another point should be noted in respect of *Shelby County* v. *Exposition Co.*, supra, which is common to all the cases illustrating the effectuation of a county purpose through the direct action of the county authorities, and that is the county handles its own funds, and applies them directly to the matters in hand.  Thus in the case just referred to the county appointed its own agents to manage and disburse the fund, and to make effectual the county purpose, the exhibition of its resources.  It did not turn the money over to the exposition company.  The opposite is true in the case before us.  The money, according to the scheme outlined in the acts, is to be turned over to Bolton College to be expended in the construction and equipment of certain desired buildings.  Moreover, when the work is completed Bolton College will own the buildings, and the county will have nothing to show for its money.

There is one further thought that should be expressed.  We have spoken of a direct and an indirect purpose.  This has reference, in addition to the exposition of the matter appearing on a former page, to the

method of effectuating the purpose, since anything which is a county purpose may be made the occasion of direct or of indirect action. For example, it has been held that a railroad running into or through a county is a county purpose. Such being true, no reason appears why a county might not, if authorized by the legislature, build and own the road itself. This would be an instance of the execution of the purpose directly. On the other hand, the county might aid in the building of the road by lending its credit, or taking stock in the enterprise, under legislative authority, which would be an instance of the indirect execution of the purpose. The latter would require a popular vote; the former would not.

On the grounds stated the chancellor's decree must be reversed, and a decree entered here declaring the bonds void, and perpetually enjoining their issuance.

The defendants will pay the costs.