The City of Chattanooga, Tennessee

*v.*

Fannie Harris et al.

442 S.W.2d 602

(*Knoxville,* September Term, 1968.)

Opinion filed June 9, 1969.

EUGENE N. COLLINS, ELLIS K. MEACHAM and RANDALL L. NELSON, Chattanooga, for appellant.

RICHARD DIETZEN, Chattanooga, for Fannie Harris.

JOHN C. CURTIS, Chattanooga, for Theodore Wheeler.

GEORGE F. MCCANLESS, Attorney General and C. HAYES COONEY, Assistant Attorney General, Nashville, for Attorney General, State of Tennessee.

ALF R. "TONY" O'REAR, Chattanooga, and ARVIN H. REINGOLD, Chattanooga, DIRISIO & REINGOLD, Chattanooga, of counsel, amici curiae.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a suit for a declaratory judgment filed by the City of Chattanooga seeking a ruling as to the constitutionality of Chapter 374, Public Acts of 1967; codified as sec. 6-640, T.C.A. The factual issues of the case are not in contention here and may be summarily stated.

Fannie Harris, a defendant in this case, brought an action against Theodore Wheeler, a Chattanooga policeman, for damages resulting from the death of her husband, who was killed in an accident involving Wheeler while he was carrying out his duties as a policeman. Wheeler, pursuant to the statute in question has peti-

tioned the City of Chattanooga to provide defense counsel in the suit and to pay any judgment rendered against him. The City of Chattanooga then brought the present action in the Hamilton County Chancery Court, and has appealed to this Court from the Chancellor's ruling that the statute is constitutional.

The statute reads, as follows:

"Whenever any employee member of a fire or police department of a municipal corporation or other political subdivision of the state of Tennessee shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment by such governmental agency, such governmental agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit; provided, however, that such indemnity shall not extend to any judgment for punitive damages or for damages arising out of any willful wrongdoing by said employee and; provided, further, that such municipal corporation or other political subdivision shall have notice of such suit.

"Provided, however, that liability on behalf of any municipal corporation or political subdivision affected by secs. 6-640, 6-641 shall be limited to fifty thousand dollars ($50,000) for each person injured or property damaged from any one (1) accident and one hundred thousand dollars ($100,000) for all injuries and all property damage resulting from any one (1) accident. Provided, further, that in the event said municipal corporation or political subdivision is unable to purchase insurance to cover its obligation hereunder, ex-

cept through the assigned risk pool, then the limit of liability hereunder shall be limited to ten thousand dollars ($10,000) for injury to any one (1) person resulting from one (1) accident and twenty thousand dollars ($20,000) for all injuries resulting from one (1) accident and five thousand dollars ($5,000) for property damage resulting from any one (1) accident if said insurance is actually purchased. If insurance is not purchased through assigned risk pool then lower limits provided for herein do not apply."

The appellant's first contention is that the statute is violative of Article XI, Section 8, and Article I, Section 8, of our Constitution in that it is class legislation and discriminates unreasonably in favor of the limited class of city employees comprised of policemen and firemen and this imposes corresponding burdens upon other employees denied its benefits. In this contention appellant relies heavily upon the unreported opinion written by former Chief Justice Neil in the case of *Shelton v. Olgiati,* filed November 16, 1954. In that case the question concerned the right of policemen and firemen to a *de novo* hearing upon the facts under the statutory writ of certiorari concerning any disciplinary action taken by the commissioner. The Court there held that the statute involved gave the policemen and firemen a preferred status and discriminated against other employees who were likewise under Civil Service, but were denied the right to such a hearing. There was no showing in that case that any reasonable grounds existed for the difference in treatment afforded the two groups of employees. It is the element of reasonableness that forms the distinction between the instant case and *Shelton.*

■■ It is elemental in our law that the keystone in determining the constitutionality of a statute under this

Section of the Constitution is reasonableness of classification. The Court noted in *Sutton v. State,* 96 Tenn. 696, 36 S.W. 697, 33 L.R.A. 589, and has reiterated many times since, that class legislation is of two kinds: namely, that in which the classification is natural and reasonable and that in which the classification is arbitrary and capricious. Class legislation whose classification is natural and reasonable is constitutional and valid, but class legislation whose classification is arbitrary and capricious is unconstitutional and invalid.

In the instant case it takes but little reflection to recognize that policemen and firemen are subject to many more incidents raising the possibility of liability than are any other city employees, either individually or as a group. Both policemen and firemen are often involved in emergency situations such that haste and directness of approach is of such importance that a consideration of possible liability resulting from taking the necessary action must not be allowed to interfere with the carrying out of their mission. Often, too, police and fire employees are not only empowered but are expected, to take actions which may violate the customary safety standards set for the public at large. Thus, the statute which implicitly recognizes the greater potential liability resulting from the peculiar duties of these two groups of employees is an example of a classification based on a reasonable and natural difference between groups of employees, and as such is not contrary to Article XI, Section 8, or Article I, Section 8, of our Constitution.

Appellant further contends that the statute discriminates against municipalities which are able to buy insurance directly by requiring such municipalities to carry policies with limits of $50,000 and $100,000 and in

favor of municipalities compelled to buy insurance through the assigned risk pool, but requiring such municipalities to carry policies with limits of only $10,000 and $20,000, without any reasonable basis for this discrimination.

It is to be noted that the statute does not require any municipality to buy insurance of any kind. However, as the next statute in the sequence, sec. 6-641, T.C.A., specifically authorizes municipalities to buy insurance coverage for all its employees, the Legislature must have realized that many municipalities would resort to this mode of providing the benefit required under the statute and to have considered the practical problems implicit in such action.

One such problem concerns the commercial practice, in the insurance field, of classifying applicants into two groups; those who may buy insurance directly at the regular rates and by ordinary procedures, and those who, because of such factors as a high incidence of liability, are denied such insurance and are relegated to an assigned risk pool where the rates are usually greatly increased or the coverage is greatly decreased, or both. For the Legislature to recognize this distinction which is made by insurers and to use it as a basis for a classification in the statute would not seem to be unreasonable, but rather the recognition of a classification already made in fact.

██ ██ It is well settled that constitutional provisions against class legislation apply only when statutory classification bears no reasonable or natural relation to the object sought to be accomplished. *Condon v. Maloney,* 108 Tenn. 82, 65 S.W. 871. It is further settled that classi-

fications made by the Legislature are reviewable by the court only where there is a showing that the classification is palpably arbitrary, *Massachusetts Mutual Life Ins. Co. v. Vogue, Inc.*, 54 Tenn.App. 624, 393 S.W.2d 164 (1965), and that if the reasonableness of the classification is fairly debatable it must be upheld. *Pack v. Southern Bell Tel. & Tel. Co.*, 215 Tenn. 503, 387 S.W.2d 789. Under these facts, and applying the law as set down by our courts, the distinction made between those who can and those who cannot buy ordinary insurance coverage must be upheld as constitutional.

█ This raises the further question concerning the extent of the difference made by the statute between the two groups of cities as concerns the amount of coverage. At first blush, it would seem that the difference in the amounts of coverage required, which is roughly in the neighborhood of 5 to 1, might raise an inference of arbitrariness. However, as the learned Chancellor noted in his well reasoned memorandum opinion, there was some evidence that the wide disparity is consonant with the actual differences between the rates incident to obtaining coverage by the respective modes. By the rulings of this Court it is incumbent upon the complainant to bear the burden of establishing that the reasonableness of the classification is not debatably sound, *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345. Appellant simply has not borne this burden. As the distinction appears to be at least debatably based upon a reasonable basis in fact, it must be sustained upon this ground.

Appellant's final contention is that the statute violates the prohibition set forth in Article II, Section 29 of our Constitution which provides in applicable part:

"The General Assembly shall have power to author-ize the several counties and incorporated towns in this State, to impose taxes for County and Corporation purposes respectively, in such manner as shall be pre-scribed by law; and all property shall be taxed accord-ing to its value, upon the principles established in re-gard to State taxation. But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, ex-cept upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election.''

In applying Article II, Section 29, the first ques-tion must necessarily be whether the attempted action is designed to accomplish some public purpose, for, as noted in *McConnell v. City of Lebanon,* 203 Tenn. 498, 314 S.W.2d 12, in speaking of an attempted bond issue, if they are not for a public or corporate purpose they would be in violation of this section even if approved by more than three-fourths of the qualified voters.

It is not to be questioned at this stage of the develop-ment of municipal activities that the maintenance of police and fire departments are proper corporate activi-ties and for a public and corporate purpose. Nor, do we feel that, considering the difficulty encountered in filling and sustaining the ranks of these departments, it can be questioned that the giving of certain ''fringe benefits'' as well as salaries are necessary in order to effectuate these public purposes. In recognition of the necessity of providing such benefits, pension plans, tenure acts, retire-ment and vacation benefits have been adopted by individ-ual cities by resolution, changes in charters, and often by acts of the Legislature. One method of approach in

considering the instant statute is to consider it as providing another such fringe benefit. As it removes the burden from the individual of carrying insurance coverage for, and defending against, suits which arise out of his employment, it might even be said that it provides an indirect pay raise for such employee. At the very least it makes employment in these departments more attractive for both the veteran and the recruit, just as other "fringe benefits" do.

The fact that the individual policeman and fireman do gain a benefit from the implementation of the statute does not deny that a public purpose is being served. This Court, in *Pack v. Southern Bell Tel. & Tel. Co.,* supra, noted that the test for whether or not the expenditure of funds is for public purpose is the end or total purpose, and the mere fact that some private interest may derive some incidental benefit from the activity does not deprive the activity of its public nature if its primary function is public.

It is a long standing rule in this State that in considering constitutional questions that if there are more than one possible ways of interpreting a statute, one of which will make it constitutional, the Court will accept that interpretation which will render the act constitutional. *Donathon v. McMinn County,* 187 Tenn. 220, 213 S.W.2d 173. In this case it is not denied that the act may be considered in other manners than that it is a fringe benefit for the employees. However, as such an interpretation is consistent with the act, and is calculated to result in the upholding of the constitutionality of the act in that such clearly is a public purpose, the Court is not required to look further to see if the act would likewise be upheld under a different analysis of its operation,

and the Court explicitly refuses to rule on such unconsidered interpretations.

The only question which remains concerns the necessity of compliance with the vote provisions found in the second part of Article II, Section 29. While there is an abundance of cases applying this section, the majority of such cases concern bond issues which are admittedly a form of credit which may fall under the prohibition found there. *Berry v. Shelby County,* 139 Tenn. 532, 201 S.W. 748, a landmark case much cited by appellant in his brief, is one such case. Even though the case is not directly in point, in that the bone of contention there is a bond issue given to aid a private college which is to be repaid by special tax, the case is still of value in that it gives a synopsis of early cases construing the instant constitutional section as well as a well reasoned and much cited statement of the law as it has been so construed.

In that case, the Court after setting forth a list of municipal actions which had been held to be examples of public purposes, notes, starting on page 542, 201 S.W. on page 750:

"It is perceived that some of the purposes are direct; as public bridges, public schools, waterworks, gasworks. * * whilst others, as the construction of a railroad into a county, or into a city, are indirect. The former promote directly the welfare of the county or city, while the latter effect this result only in an incidental way, * * *.

"Where the purpose is direct, and is accomplished by direct action of the county or city, * * * the matter falls under the first paragraph of section 29 of article 2, quoted supra, and the Legislature need not require an election; * * *."

█ The case further discusses the situation where a direct public purpose is carried out by indirect means, i. e., through the instrumentality of a separate body to which credit is given. It there recognizes that some expenditures, even though made for a direct public purpose, may because of the manner of carrying out the purpose actually encompass a giving of credit to some outside interest. Such does not seem to be the case here. The direct public purpose in this case is effectuated by means of the city directly furnishing counsel, and by directly appropriating money either to buy coverage to pay any judgment, or by its paying the judgment out of funds set aside for that purpose. The city does not work through a grant of credit to some outside instrumentality, and, thus, the plan falls into the class of expenditures which are constitutionally valid without an election being necessary.

Having considered the merits of each of the contentions of the appellant, we find the statute constitutionally valid, and declare the rights of the various parties before the Court to be those rights and duties consistent with the statute as enacted.