Jean DOANE, Lacy D. Keele, Robert H. Kernohan, Owen P. Killeen, Harvey T. Kite, Jane McCullough, and William E. Sallee, Plaintiffs–Appellants,

v.

The CITY OF OAK RIDGE, Tennessee, Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

Jan. 10, 1995.

Rehearing Denied Feb. 14, 1995.

Permission to Appeal Denied by Supreme Court May 8, 1995.

David A. Stuart, Stuart and Van Riper, Clinton, for plaintiffs-appellants.

G. Mark Mamantov and Michael S. Kelley, Bass, Berry and Sims, Knoxville, Robert W. Wilkinson, City Atty. for Oak Ridge.

Buxton and Wilkinson, Fiona F. Hill, Staff Atty., City of Oak Ridge, Oak Ridge, for defendant-appellee.

## *OPINION*

FRANKS, Judge.

In this declaratory judgment action seeking to enjoin the defendant from issuing Capital Outlay Notes to finance the construction of a municipal golf course, the Trial Judge granted summary judgment to defendant, City of Oak Ridge, and plaintiffs have appealed.

In 1992, defendant undertook to acquire a 541 acre tract of land known as "Parcel A" from the U.S. Department of Energy for the purpose of constructing a public golf course. The development plan included a residential area comprised of single and multi-family dwellings surrounding the course, along with some convenience retail business facilities.

After much fine-tuning of the development concept and an extensive solicitation and selection process, defendant selected Cowperwood Company ("Cowperwood"), a Texas firm, to design and construct the municipal golf course. The defendant also decided to issue Capital Outlay Notes (the "Notes") to finance the project in an amount not to exceed $6,200,000.

In addition, the defendant and Cowperwood were to enter into a 40–year land lease agreement. Pursuant to its terms, Cowperwood was to lease a portion of Parcel A

where it was to construct, operate, and maintain certain practice facilities, including a driving range, a pitch and putt area, and a plus 3 course. The facility was to be open to the public, and, upon expiration of the lease term was to be turned over to the defendant. The rent to be paid by Cowperwood included a "base rent" based on gross revenues with a minimum payment increasing over time, and an additional "percentage rent", calculated with respect to gross revenues, also increasing over time.

The defendant granted Cowperwood a ten year option to purchase the remaining portions of Parcel A in phases within specified periods of time, on which Cowperwood was to construct and market residential single and multi-family dwellings which would be accessible to families from a variety of socio-economic income levels. Upon exercise of its option, with respect to a particular phase, Cowperwood agreed to pay an "Initial Land Payment" based on the defendant's original purchase cost per acre. Thereafter, when Cowperwood either sold the land as lots for construction or sold residential dwellings which it had constructed, it would pay two additional amounts to defendant, referred to as the "Differential Payment" and the "Profit Participation Payment". These additional payments were to be determined by formulas and ensured that defendant would be reimbursed for appreciation of the land over the period of time covered by the option agreement.

The substance of all three contracts was summarized in a document called the Master Development Agreement (the "MDA"). The MDA included several additional provisions, called "Backstops", which amounted to additional payments, determined by formula, to the defendant by Cowperwood in the event the revenues from the golf course and the land lease were insufficient to cover the defendant's debt service on the Notes.

In March of 1994, defendant approved the agreements by resolution, and authorized the issuance of the Notes. On April 6, one day prior to the scheduled sale of the Notes, plaintiffs filed this action asserting the agreements and the Notes were illegal and unconstitutional pursuant to Article 2, § 29 of the Tennessee Constitution[1], and therefore void, and sought a permanent injunction against the issuance of the Notes. The defendant filed a Motion to Dismiss and plaintiffs, in turn, filed a Motion for Summary Judgment. An expedited hearing was held on the motions on April 20, at which time plaintiffs withdrew their motion, and the Trial Judge ultimately granted defendant's Motion to Dismiss, treating it as a Motion for Summary Judgment.

In granting defendant's summary judgment, as a matter of law, the Trial Court observed:

> The issuance of the Notes does not violate the Tennessee Constitution or applicable case law. The City's credit is not being used to aid a private developer, as alleged by the plaintiffs. Payment of a portion of gross profits from business operations are for rent of City-owned land of Cowperwood. Furthermore, payments by Cowperwood to the City of a portion of Cowperwood's profits are elsewhere related to the exercise of Cowperwood's option to purchase land adjacent to the golf course as part of the residential development. These provisions contradict the plaintiffs' arguments that a partnership exists or that the City's credit is being extended for the aid of the developer.

We conclude that the agreements contemplated by defendant and Cowperwood are not proscribed by the Constitution or any statutes and fall within the ambit of T.C.A. § 9–21–107.[2]  Moreover the issuance of the

---

1.  **Art. 2, Sec. 29. Counties and Towns—Power to tax—Credit.—** ...  But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election.

2.  **T.C.A. § 9–21–107. Powers of local governments.—**All local governments have the power and are authorized ... to:
    (1) Engage in the construction of any public works project which may be constructed within or without the local government ...;
    (2) Operate and maintain any public works project for its own purpose or for the benefit and use of its inhabitants ...: ...

Capital Outlay Notes is not an unconstitutional lending of the defendant's credit to Cowperwood. The proceeds of the Notes are to be used to finance the construction of the golf course only, which the City will own and operate upon completion. Nor has the City entered into an implied partnership arrangement with Cowperwood amounting to an unconstitutional lending of the City's credit to this corporation.

It is not disputed that the project has a public purpose, the threshold issue on which the constitutional question has been raised. *See Berry v. Shelby County*, 139 Tenn. 532, 201 S.W. 748 (1918); *City of Chattanooga v. Harris*, 223 Tenn. 51, 60, 442 S.W.2d 602 (1969). *See also* T.C.A. § 9–21–105(20).

The contracts which are the subject matter of this action cover every phase of this public works project and set forth in great detail the legal relationships created. Each is a separate agreement providing for the undertaking of specified obligations by the parties and specific remedies in case of breach. The agreements, by their terms, are not interdependent. For example, the golf course construction contract does not require Cowperwood to enter into any other agreement in order for the contract to be valid. The same is true of the other agreements.

■ There are no provisions for the sharing of profits or liabilities for losses pursuant to the initial pooling of investment capital. Although the provisions of the land lease require the payment of rent based on a percentage of gross revenues, this does not comprise the sharing of profits or losses in a partnership arrangement. *See* T.C.A. § 61–1–106(3) and (4)(B). The rent in many, if not most, commercial leases is based on a percentage of revenues. Nor does the "Differential Price" or the "Profit–Participation price" payments required of Cowperwood for the final sale of the property under the land option agreement comprise the sharing of profit or loss pursuant to a partnership. *See* T.C.A. § 61–1–106(4)(E). Finally, the "Backstop" payments required of Cowperwood pursuant to the MDA, if the City experiences a shortfall in the golf course revenues, are not evidence of a partnership arrangement. There is no reciprocal obligation on the defendant's part to shoulder any shortfalls Cowperwood might experience. These payments merely provide additional security for the defendant and must be made under the specified circumstances regardless of whether Cowperwood suffers losses.[3]

■ There are no co-ownership provisions in the contracts. *See Colburn v. Chattanooga Western Railroad*, 94 Tenn. 43, 28 S.W. 298 (1894), where Hamilton County's issuance of bonds was found to be an unconstitutional lending of the County's credit, as bonds were to be turned over to the railroad after construction of a duel level bridge as payment for the County's joint ownership of the bridge with the railroad. In this case,

(3)(D) Issue bonds or notes to finance such construction, grant, donation reimbursement or loan;

. . . .

(10) Acquire by purchase, gift or the exercise of the right of eminent domain, to lease as lessor or lessee, and to hold, dispose of, and convey any property, real or personal, tangible or intangible, or any right or interest in any such property, in connection with any public works project, whether or not subject to mortgages, liens, charges or other encumbrances, and to construct any public works project subject thereto.

. . . .

(12) Make contracts and execute instruments containing such terms, provisions and conditions as in the discretion of the governing body may be necessary, proper or advisable for the purpose of obtaining a grant, loan or other financial assistance from the state or any state or federal agency pursuant to a state or federal aid act; make all other contracts and execute all other instruments, necessary, proper or advisable in or for the furtherance of any public works project, and carry out and perform the terms and conditions of all such contracts or instruments.

3. The plaintiffs make much of the "partnership" language utilized in the various memoranda authored by the City Council, asserting that these are party admissions and admissible as evidence that the City has, in fact, entered into an illegal and unconstitutional partnership with Cowperwood. This argument has no merit. It is clear from the contexts in which this terminology is used, that the City was not describing the legal relationship between itself and Cowperwood. "Partnership" language is used by lawyers and laymen alike all the time without the intent of describing or creating an actual legal relationship. Lawyers, in fact, are probably the worst offenders, typically describing their fellow professional corporation stockholders as "partners".

defendant will own and operate the golf course upon completion of construction, and will lease the land where Cowperwood is to construct the golf practice facilities. After the lease term expires, Cowperwood is required to turn the facility over to defendant.

■ Our examination and analysis of the documents provides no basis to conclude that the agreements are anything other than what they purport to be, a construction contract, a land lease, and an option for the purchase of land. The plaintiffs' argument that taken together these agreements somehow create an implied partnership constituting an unconstitutional lending of the defendant's credit to Cowperwood, has no merit. None of the indicia of a partnership exists. There is no pooling of investment capital, there is no co-ownership, there is no liability on the defendant's part for Cowperwood's losses. The defendant and Cowperwood will not share the profits derived from the operation of the golf course. The land lease is a typical commercial type lease authorized by statute, and the land option is a vehicle for the sale of real property authorized by statute.

■ Finally, defendant is not, as plaintiffs contend, turning over the proceeds of the Notes to Cowperwood for improvement of property which will not belong to defendant. *See Berry v. Shelby County,* where the County's issuance of bonds to finance the improvement of property owned by a private college, *which property was to continue to belong to the college,* was found to be an unconstitutional lending of credit to the college. (Emphasis supplied). Further case authority clearly establishes that any benefit Cowperwood may experience by virtue of its purchase and sale of the land adjacent to the municipal golf course pursuant to the land option agreement does not amount to an unconstitutional lending of defendant's credit. *See Imboden, et al. v. City of Bristol, et al.,* 132 Tenn. 562, 179 S.W. 147 (1915); *Reed v. Mayor and Aldermen of City of Athens, et al.,* 146 Tenn. 168, 240 S.W. 439 (1921); *Nashville Housing Authority v. City of Nashville, et al.,* 192 Tenn. 103, 115, 237 S.W.2d 946 (1951).

We have considered the remaining issues and find them to be without merit. We affirm the judgment of the Trial Court and remand with costs of appeal assessed to appellants.

McMURRAY and SUSANO, JJ., concur.