Joe N. LOGGINS in his capacity as Manager of The Board of Public Utilities of the City of Tullahoma, Tennessee, Plaintiff/Appellant,

v.

Irby LIGHTNER, Defendant/Appellee.

Irby LIGHTNER, Plaintiff/Appellee,

v.

The TULLAHOMA UTILITIES BOARD, The City of Tullahoma, Joe N. Loggins, in his capacity as Manager of the Tullahoma Utilities Board, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 30, 1994.

Application for Permission to Appeal Denied by Supreme Court March 20, 1995.

---

William C. Rieder, Tullahoma, for appellant.

Michelle M. Benjamin, Winchester, for appellee.

TOMLIN, Presiding Judge, Western Section.

The Board of Public Utilities of the City of Tullahoma (TUB), through its manager, Joe Loggins, filed suit in the Coffee County Circuit Court against Irby Lightner, a resident and property owner of Tullahoma, seeking an injunction against Lightner to require him to abandon the septic tank serving his residence and to connect onto a public sewer being provided by TUB. Lightner answered and filed a separate action against TUB, seeking a writ of certiorari and declaratory judgment, contending that TUB could not require him to connect to the sewer system. Following a nonjury trial, the court ruled against Lightner, but held TUB's efforts seeking to require Lightner to connect to its sewer system were arbitrary, and denied TUB's request for an injunction. On appeal, the sole issue TUB presented for review is whether the trial court erred in holding that TUB acted arbitrarily in attempting to require Lightner to connect to the public sewer system. For the reasons stated hereafter, we are of the opinion the trial court erred and accordingly reverse.

Almost fifty years ago Tullahoma (City) adopted an ordinance creating TUB for the purpose of operating City's electric system. It was subsequently given control of City's water and sewer systems as well. For a period of some eight years, ending in 1985, the Tennessee Department of Health and Environment had placed City under a sewer moratorium, prohibiting it from making new connections to its existing sewer system except under limited circumstances. Following the lifting of the moratorium, City commissioned the development of a Master Sewer Plan for the extension of the sewer system throughout City. The plan was approved by the state health department.

On two occasions thereafter, the Coffee County Health Department notified TUB of failing septic tanks in Lightner's neighbor-

hood, advising that they posed health and environmental hazards. Following a confirmation of these conditions, TUB extended the municipal sewer line to Lightner's neighborhood.

In December 1988, TUB notified Lightner that a new sewer line had become available and that he should take steps to connect to it. He refused to do so within the thirty-day period set forth in City's Sewer Use Ordinance. His continued refusal to connect, following subsequent denials of appeals to TUB and City's Board of Mayor and Aldermen, prompted TUB to file this suit.

The Sewer Use Ordinance in effect during this time stated:

> At such time as a sewer becomes available to a property served by a private wastewater disposal system, a direct connection shall be made within thirty (30) days to the public sewer. The sewer shall be considered available where the first floor of the building ... can be served by the sewer line in accordance with ... [TUB's] rules and regulations and general practice.

Tullahoma City Code § 13–311.

In addition, TUB adopted the following resolution establishing when public sewer service is considered to be available:

> Sewer is considered available to a dwelling when the property on which the dwelling lies is adjacent to the sewer line or is adjacent to a street right-of-way containing a sewer line and the distance from the dwelling to the sewer line or street right-of-way is not more than 200'. When the distance is more than 200' or for other reason the dwelling is not practical to sewer, the dwelling may be connected by mutual agreement between the owner and the Board; however, the Board's participation shall be limited to providing 200' of pressure line and one grinder pump unit.

Board of Public Utilities of the City of Tullahoma, Resolution Regarding Residential Readiness-to-serve Charges and Sewer Extensions (Dec. 22, 1987).

After Lightner had been notified that a public sewer line was available to serve his property, and after he failed to connect to the system within thirty days following said notice, Loggins advised Lightner that a Cease and Desist Order would be issued if he failed to take steps to connect within a certain period of time. After Lightner again refused to do so, Loggins issued a Cease and Desist Order directing Lightner to make the connection and to abandon his septic tank. After Loggins denied Lightner's request to reconsider his Cease and Desist Order, Lightner appealed to the Board of Sewer Regulations and then to the Board of Mayor and Aldermen, both of which rejected his appeal.

In his suit against TUB, Lightner contended that the sewer line serving his property was improperly installed, that it failed to meet state sewer regulations, that it was improperly designed, and that the efforts by TUB to require him to connect to it were arbitrary and capricious.[1] During the course of his testimony, Loggins stated that a new subdivision, Windbriar, was developed in 1990 in an area that had previously been without sewers. He further stated that in order to provide a sewer for this development in the most efficient and economical way, a four-inch line was installed in the subdivision for service to the residents of Windbriar only. This four-inch line was connected to one of the existing trunk lines of TUB. Loggins further testified that this four-inch temporary line was not designed to serve any existing property between the Windbriar subdivision and the point at which it connected with the trunk line. TUB plans to eventually replace this temporary four-inch line with a permanent ten-inch line that will follow a different route in connecting with the TUB service line.

It appears from Loggins's testimony that the temporary four-inch line passed within 200 feet of two or three houses outside the Windbriar subdivision. Loggins stated that TUB did not require these two or three property owners to connect to this temporary

---

1. Except for the finding of the trial court that TUB acted arbitrarily, all of Lightner's contentions were found to be without merit by the trial court. Lightner took no appeal from this action of the court.

line, but allowed them to keep their septic tanks. This allowance was made for the reason that when the temporary line was abandoned on construction of the permanent line, which would take a different route, these property owners would have no sewer system at all, as they previously would have been forced to abandon their septic tank systems in order to tie on to the temporary system.

In ruling that Lightner was not required to tie on to this new sewer system in his neighborhood, the court found that TUB was acting "arbitrarily" in requiring Lightner to connect to the sewer line when it was not requiring the two or three property owners adjacent to the temporary sewer line to connect. The court further excused Lightner from connecting until the four-inch temporary line was replaced by TUB with a permanent line.

We have for review the action of a local government, by and through its utility board. The Supreme Court in *McCallen v. City of Memphis*, 786 S.W.2d 633 (Tenn.1990) clearly delineated our scope of review in a case such as this. The *McCallen* court quoted with approval the following from 82 *American Jurisprudence 2d:*

> "Judicial review of administrative determinations ... is limited in scope. The ... extent of a judicial review ... is narrow. As a general rule [local governmental bodies are] clothed with broad discretionary powers, the decision ... will not be disturbed or set aside by a reviewing court unless [it] is arbitrary, or capricious, [an abuse of discretion, or clearly erroneous]."

*McCallen,* 786 S.W.2d at 641 (quoting 82 *Am.Jur.2d* Zoning and Planning § 334) (alterations in original).

The court then concluded by stating:

> Whether the action by the local governmental body is legislative or administrative in nature, the court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body. An invalidation of the action should take place *only* when the decision is clearly illegal, arbitrary, or capricious.

*Id.* at 641–42 (emphasis added).

In a thorough memorandum opinion and order, although he reached an erroneous conclusion, the trial judge outlined the basis for his finding that TUB's action was arbitrary. The trial court stated in part as follows:

> However, during the course of the proof there was testimony that a sub-division was developed in the Windbriar section of Tullahoma where a four-inch sewer line was installed to connect the subdivision to the City sewer that TUB characterizes as "temporary". Proof further developed that along that sewer line there were at least three houses that were not required to tie on to this line because a permanent sewer line was to be installed at some point in the future and that to require these individuals to tie-on to the line and then be disconnected at some point in the future would be inherently unfair. The undersigned does not disagree with the logic expressed by TUB and think it would not be fair to require two or three individuals whose property is serviced by what TUB characterizes as a temporary sewer line to tie-on to a line that would subsequently be abandoned. Not withstanding that position of TUB, the ordinance does not mention a temporary sewer line as opposed to a permanent sewer line. The question then becomes, is TUB in not requiring these property owners in violation of their own ordinance arbitrarily requiring Mr. Lightner and those similarly situated to tie on to the sewer line in front of his house. The ordinance simply sets out that if you are a property owner and the sewer line passes within 200 feet that property owner is obligated to tie-on to the line with no exceptions. From that perspective, it is the opinion of the undersigned that the TUB action is arbitrary.

Order (Dec. 2, 1993).

The trial court did not disagree with TUB's action in declining to require two or three property owners to tie into a temporary sewer line that would subsequently be abandoned, meaning they would have to "reincarnate" their septic tank systems. To the con-

trary, the court took issue with TUB's position in making a distinction between a "temporary" sewer line and a "permanent" sewer line, when the ordinance simply talked about a "sewer line." Thus, the trial court found that TUB had acted arbitrarily in dealing with Lightner.

In our opinion, this is a strained construction that was not justified by the facts or law. The meaning of a statute is determined by looking at the statute as a whole and in light of its general purpose. *City of Lenoir City v. State,* 571 S.W.2d 297, 299 (Tenn.1978). Courts should follow the rules of statutory construction when construing municipal ordinances and resolutions. *Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't,* 798 S.W.2d 254, 260 (Tenn.App.1990).

In deciding that TUB acted arbitrarily as to Lightner, the trial court in essence ruled that TUB's interpretation and application of its Sewer Use Ordinance was not based on any course of reasoning or exercise of judgment. *See State ex rel. Nixon v. McCanless,* 176 Tenn. 352, 141 S.W.2d 885, 886 (1940). City was faced with an acute waste water problem. The sewer moratorium was imposed because there were problems with the treatment of waste water, causing a severe overflow at the wastewater plant. This moratorium resulted in a restriction of the expansion of the sewer system in City. Several subdivisions had been developed during the twelve-year moratorium period that utilized private septic tanks as they were not able to connect to the public sewer system.

The construction of a new wastewater treatment plant played a large part in the lifting of the moratorium so that TUB could respond to City's needs. Independent studies, as well as a study by City, revealed that in Lightner's area there was substantial failure of septic tank systems, causing sewage and waste water to seep to the surface. The answer to this undesirable condition was the expansion of the sewer system to provide public sewers to the residents of the affected areas.

TUB considered that the general purpose of the Sewer Use Ordinance was to require property owners to connect to the public sewer and thereby abandon their individual septic tank systems. TUB believed this would satisfy the waste disposal needs on a permanent basis and eliminate the health hazards that existed from failing septic tank systems. Applying the *McCallen* standard to the facts of the case at bar, there are more than adequate reasons to justify TUB's interpretation and application of this ordinance. It was error for the trial court to find that the application of this ordinance as to Lightner was arbitrary.

Accordingly, the judgment of the trial court is reversed. Upon remand, the trial court is respectfully directed to issue an injunction to Lightner to abandon his private septic tank and to make a direct connection to the public sewer provided by TUB. In addition, the trial court is to conduct whatever hearing is necessary to determine the amount of civil penalty to be imposed upon Lightner for failing and refusing to comply with the provisions of City's Sewer Use Ordinance, and such other relief as is necessary. Costs in this cause on appeal are taxed to Lightner, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.