PORTER FREEMAN,                    )
                                   )
        Plaintiff/Appellant,       )
                                   )       Appeal No.
                                   )       01-A-01--9705-CH-00237
VS.                                )
                                   )       Williamson Chancery
                                   )       No. 24424
ROBERT RING, COUNTY                )
EXECUTIVE, JERRY SHARBER,          )
MAYOR, and JAMES JOHNSON,          )
ADMINISTRATOR,                     )
                                   )
        Defendants/Appellees.      )

**FILED**

**January 9, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, CHANCELLOR

PORTER FREEMAN
7131 Nolensville Road
Nolensville, Tennessee 37135
        Pro Se/Plaintiff/Appellant

RICHARD A. BUERGER
306 Public Square
Franklin, Tennessee 37064
        Attorney for Defendant/Appellee Robert Ring

DOUGLAS BERRY
Suntrust Center
424 Church Street, Suite 2900
Nashville, Tennessee 37219
        Attorney for Defendants/Appellees Jerry Sharber and James Johnson

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED


                        WALTER W. BUSSART, JUDGE

CONCUR:
TODD, P.J., M.S.
CANTRELL, J.

# O P I N I O N

The appellant sought to enjoin both city and county officials from the sale of general obligation bonds. The Chancery Court of Franklin granted all defendants' motions to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. On appeal, we must determine whether the trial court erred in not considering the petition for injunction on the merits as against either the city or the county defendants.

## I. Procedural Background

This case began when Porter Freeman filed a *pro se* "Petition for Injunction" in the trial court naming as defendants Robert Ring, the county executive of Williamson County, Jerry Sharber, the mayor of the city of Franklin in Williamson County, and James Johnson, the city administrator for Franklin. As stated, the trial court dismissed the petition against all defendants under Tennessee Rule of Civil Procedure 12.02(6). The office of a rule 12.02(6) motion is to test the sufficiency of the complaint. This rule encompasses the old common law pleading of "demurrer." The movant is saying that assuming everything alleged is true, "so what?" With that in mind, we turn to the petition. To say that it is inartfully drafted would be an understatement; it does however state in part as follows:

> The county commissioners of Williamson County and the alderman [sic] of Franklin, Tn., have authorized these officials to make arrangements and to sell bonds to loan or give aid to special interest groups, namely: The Williamson County soccor [sic] association, the city of Thompson Station and Brentwood, Tn., the Williamson County conference center, and possible building of stadium and practice center of the now, Houston Oilers. All of these projects are in violation of our Tennessee Constitution, namely: Article II section 29 and Article [XI] Section 16.

Attached to the complaint is a letter written by the appellant to all three defendants on November 18, 1996 which states as follows:

Gentlemen:

I am writing to you regarding your actions to building a socker [sic] stadium for the Williamson County Socker [sic] Association, this applies to Robert Ring.

The proposed Oiler's deal practice field and whatever, this applies to Mayor Sharber and James Johnson.

The proposed convention center for the motel, hotel and resturant [sic] interest, all of these are special interest and not in the best interest of all the people of Williamson County.

Again, I want to point out to all of you, that these actions are in violation of your oaths of office you all made by each of you before taking office, to support the Constitution of Tennessee and the U.S..

The Constitution of Tennessee, article 2, section 29[1] says that you must prepare your plans and intentions for these projects, then present them to the people in an election, with 75% of the people voting in the election to approve, before you can continue on with these projects. It also says that you cannot join together and with these special interest groups without an election first being held, and with like manor, 75% vote approval.

If you are going to continue with your plans in these deals, I strongly request that you obey the constitutional mandates before you go any further with your plans.

Why not let these special interest groups build their own businesses and pay their taxes as all the other people of the County have to do?

I now call your attention to article [XI], section 16,[2] which says that the Constitution of this state of Tennessee, shall never be violated on any pretense whatever, and shall forever remain involate. [sic] This means you cannot go around it's [sic] provisions ever. Copies of these sections inclosed. [sic]

I am hop'ing [sic] that you will abide by your oaths to obey the Constitution of Tennessee mandates and do the right thing after a vote in the next election to be held, and not special referendum.

---

[1]The full text of this section is as follows:

The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for County and Corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation. But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election.

Tenn. Const. art. II, § 29.

[2]The declaration of rights hereto prefixed is declared to be a part of the Constitution of this State, and shall never be violated on any pretence whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the general powers of government, and shall forever remain inviolate.

Tenn. Const. art. XI, § 16.

These are the only provisions in the complaint which could be construed as stating a cause of action. With these in mind, we turn to a review of the trial court's dismissal as pertains to each defendant.

## II. City Defendants

In support of its dismissal of the action against the city defendants, the trial court noted that Mr. Freeman did not allege that he is a taxpayer of the City of Franklin but only of Williamson County. The court reasoned as follows:

> The plaintiff could therefore suffer no injury in the form of an increased tax burden from the City of Franklin. He therefore has no standing to ask the Court to restrain the City of Franklin or its officials from taking any action of any kind.

Lack of allegations that establish standing may support a motion to dismiss under Rule 12.02(6). *See Curve Elementary Sch. Parent and Teachers' Organiz. v. Lauderdale County Sch. Bd.*, 608 S.W.2d 855, 857 (Tenn. Ct. App. 1980) (citing *Knierim v. Leatherwood*, 542 S.W.2d 806 (Tenn.1976)). With regard to tax-payer standing, case law has consistently required "that a taxpayer on his own behalf and that of others could maintain an action to prevent the commission of an unlawful act which would increase his tax burden or create a diversion of public funds from their lawful purpose." *Parks v. Alexander*, 608 S.W.2d 881, 890 (Tenn. Ct. App. 1980), *cert. denied*, 451 U.S. 939 (1981). The court in *Parks* summarized previous law in stating that "[a]ll the cases require some special or private damage to the complainants that separates their interest in the subject matter from that of the citizenry at large. Some of the cases recognize that being a taxpayer and bearing additional liability may constitute such special damage." *Id.; see Cobb v. Shelby County Bd. of Comm'rs*, 771 S.W.2d 124, 126 (Tenn. 1989) (where taxpayers and citizens of Shelby County, as such, brought action to declare invalid an ordinance authorizing salaries for members of the county board of commissioners and the court

- 4 -

found that the plaintiffs had alleged all the elements of taxpayer standing the first of which was "taxpayer status"). Here, Mr. Freeman has not alleged that he is a Franklin taxpayer nor that he has suffered special injury otherwise.

Mr. Freeman presents two other grounds in support of his standing against the city defendants: first, his citizenship as a Tennessean and, second, his payment of money to Franklin in other (non-property) taxes, presumably in sales tax. The first of these grounds is directly contrary to the requirement that special injury is needed to bring suit as a taxpayer. This court has stated that "[t]he purpose of the requirement of standing is to assure that the matter before the court presents a justiciable controversy. The issue is whether the party seeking relief has alleged 'such a personal stake in the outcome of the controversy to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Huntsville Util. Dist. v. General Trust Co.*, 839 S.W.2d 397, 401 (Tenn. Ct. App. 1992) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Secondly, the law does not provide support for Mr. Freeman's allegation that the payment of sales tax in Franklin confers on him standing to sue that city. Our court has held that "'the legal incidence of the retail sales tax is upon the vendor of the taxable services or property, and not upon the vendee or consumer.'" *Beare Co. v. Olsen*, 711 S.W.2d 603, 605 (Tenn. 1986)(quoting *South Cent. Bell Tele. Co. v. Olsen*, 669 S.W.2d 649, 651 (Tenn.1984)) ; *see also Reimann v. Huddleston*, 883 S.W.2d 135, 137 (Tenn. Ct. App. 1993), *cert. denied*, 513 U.S. 825 (1994). As such, the consumer of the products being sold by the vendor of taxable retail items has no standing to challenge the sales tax. *Beare*, 711 S.W.2d at 606. It follows that payment of the sales tax does not give consumers standing to challenge the issuance of general obligation bonds payable in part from tax levied on the taxable property in

the city.  **See** Tenn. Code Ann. § 9-21-201, § 9-21-205(4)(A) (1991) (providing that the bonds will be secured by *ad valorem* taxes on property within the local government). As the defendants pointed out in their brief, under this theory of standing, any citizen of the United States, indeed the world, could purchase a pack of gum in Franklin, Tennessee and thereby acquire standing to sue city officials.  We, therefore, agree with the trial court and affirm the dismissal as to Defendants Jerry Sharber and James Johnson.

## III.  COUNTY DEFENDANT

### A.  Complaint and Dismissal Regarding Defendant Ring

In dismissing the complaint against Defendant Ring, the court simply stated that Ring's motion was well-taken.  In his motion to dismiss, Ring had cited two reasons for dismissal.  First, he noted that the Williamson County Board of County Commissioners has the exclusive authorization to issue general obligation bonds and, second, that Appellant failed to file a petition signed by ten percent of the eligible voters within the time period established by section 9-21-207 of the Tennessee Code.[3] At oral argument, Mr. Ring's attorney emphasized that Mr. Freeman had just sued the wrong defendant because the statute provides that the legislative body, here the county commission, not the county executive, will issue the resolution which authorizes obligation bonds.

### B.  Standing

---

[3]In section 9-21-201, the Tennessee Code governs the procedure for issuing general obligation bonds which are "those bonds in which the local government incurs a definite and absolute obligation by pledging the full faith, credit and unlimited taxing power of the local government as to all taxable property in the local government or of a portion of the local government, if applicable, to the payment of the principal of and interest on such bonds." While this statute does not automatically provide for a referendum when general obligation bonds are issued, it does provide a procedure for the affected taxpayers to obtain a referendum.  If at least ten percent (10%) of the registered voters of the local government file a petition protesting the issuance of the general obligation bonds within a certain time limit, they will not be issued without the assent of the majority.

At oral argument, Appellant was invited to request the trial court to furnish this court information as to whose signature was necessary for the issuance and/or distribution of bonds. Appellant did supplement the record with a copy of a "Certificate of Award of $22,665,000 General Obligation Public Improvement Bonds, Series 1996, and $530,000 Rural School Bonds, Series 1996." Robert Ring's signature is on this document. Additionally, Appellant included the "Official Bond Bid Form" which was sent to Mr. Ring in his capacity as county executive and bears his signature as having been accepted on October 22, 1996.

It is the opinion of this court that these supplementary documents cannot be considered here because they were not a part of the complaint. Appellant did not ask the trial court to amend the complaint, rather he filed documents in this court for consideration. The law is clear that "[a]n appellate court may not permit the introduction of evidence in the first instance." *State v. Smith*, 893 S.W.2d 908, 917 (Tenn. 1994), *cert. denied*, 116 S. Ct. 99 (1995). The information submitted by Mr. Freeman does not consist of facts that were alleged in the complaint.

Nevertheless, Appellant includes in his complaint the allegation that defendant Ring is the county executive and prays that Ring be restrained from further action until an election can be held in accordance with the constitution. The complaint further alleges that Porter Freeman is "a citizen of the United States, Tennessee and Williamson County." Therefore, he seems to have sufficiently alleged standing against Defendant Ring.

**C. Sufficiency of the Pleadings**

Next we turn to the pleadings as presented below to review the motion to dismiss Defendant Ring. It has been murmured by older members of the bar of this state that, under the "new" rules of civil procedure (particularly Rules 8 and 9), all that is necessary to get into court is for the party to write "help" on a piece of paper, fold it like a paper airplane and sail it through the window of the clerk's office. While this is an exaggeration, the rules do contemplate notice pleading and only a "short and plain statement of the claim showing that the pleader is entitled to relief" is required. Tenn. R. Civ. P. 8.01. As this court has stated, "[p]leadings give notice to the parties and the trial court of the issues to be tried." *Castelli v. Lien*, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995); *see also Prince v. Coffee County*, No. 01A01-9508-CV-00342, 1996 WL 221863 at *3 (Tenn Ct. App. 1996) (stating that "Tennessee's notice pleading requires a complaint to contain only minimum general facts that would support potential cause of action under Tennessee substantive law").

The petition below is clear in its allegation that Williamson County has given aid to private interest groups in violation of the Tennessee Constitution by selling bonds to finance the construction of certain projects. The pertinent portion of Article II, Section 29, upon which Mr. Freeman relies, provides as follows:

> But the credit of no County, City or Town shall be given or loaned to or in aid or any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election.

The gist of Appellant's claim is that this constitutional provision prohibits the issuance of general obligation bonds without an election.

The question then becomes whether or not the issuance of general obligation bonds absent an election as provided in Article II, Section 29, violates the constitution. More specifically the question is, under the complaint as filed, is there any set of facts which could be proven which would impose some new financial liability upon the

county and result in the creation of public debt for the benefit of private enterprises. *See Copley v. Fentress County*, 490 S.W.2d 164, 169 (Tenn. Ct. App. 1972).

In *Copley*, the court dealt with a county's authority to construct an industrial building to be used by a private industry which would employ local citizens. *Id.* at 165. The money to build the building had accrued in the county's budget over the past years, and, as it was not necessary for the county to borrow any money, no bonds were issued. *Id.* The court articulated the main questions as follows:

> (1) Does Fentress County have the authority to construct an industrial building to be used by a private industry which will employ local citizens?
> (2) Is it necessary for an election to be held for the purpose of obtaining approval of three-fourths of the qualified voters voting in such election before such industrial building can be constructed with the use of County funds?

*Id.* at 166. The court first concluded that the building was for a public purpose. *Id.* at 168. With regard to the second question, it found that it did "not agree that the challenged action of the County Court constitutes giving or lending of credit of said County for any illegal purpose in view of the uncontroverted fact that the County is not borrowing any money for such purpose." *Id.* The court held "that the word 'credit', as used in Article II Section 29 of the Tennessee Constitution implies the imposition of some new financial liability upon a county, city or town which in effect results in creation of a public debt for the benefit of private enterprises and this was the evil intended to be prevented by said constitutional provision." *Id.* at 169.

In *Mayor of Fayetteville v. Wilson*, 367 S.W.2d 772 (Tenn. 1963), the constitutionality of Tennessee's Industrial Park Act was in question. That Act "[gave] the cities and counties authority to acquire and develop industrial parks in order to be more successful in attracting industry." *Id.* at 774. In order to do this, the act provided that "the counties and incorporated cities and towns are authorized to issue bonds in financing industrial parks and to pledge their full faith and credit by either of three

methods." *Id.* The court upheld as constitutional only that method which required a thee-fourths vote in accord with Article II, Section 29.

In holding as it did, the ***Wilson*** court cited an earlier case involving the constitutionality of the Industrial Building Bond Act of 1955, a very similar law previously enacted to accomplish the same purposes as the act at issue in ***Wilson***. ***See Wilson***, 367 S.W.2d at 774 (citing ***McConnell v. City of Lebanon***, 314 S.W.2d 12 (Tenn. 1958)). The Industrial Building Bond Act of 1955 at issue in ***McConnell*** had "authorized the various cities and counties of the State to issue bonds pledging their full faith and credit with the proceeds of said bonds to be used to improve or construct industrial buildings to be leased to private firms, which will thereby give employment to the people of the State." ***Wilson***, 367 S.W.2d at 774. Significantly, the ***Wilson*** court stated that "[s]ince such amounts to lending the credit of a city or county to a person, company, association or corporation to accomplish a public purpose the Act provides for an election as demanded by Article 2, Section 29 of our Constitution." ***Id.***

In ***McConnell***, the propriety of holding a referendum was not even at issue. The statute under scrutiny required an election and, indeed, the city defendant had held an election "by which much more than three-fourths of the qualified voters, as required by the statute, ha[d] voted in favor of the execution of the purposes permitted by said statute by the City of Lebanon." ***McConnell***, 314 S.W.2d at 14. At issue was whether or not these bonds were issued for a public purpose and also, even if they were for a purely private purpose, would they "nevertheless be valid because they were approved . . . by a vote of three-fourths of the qualified voters[?]" ***Id.*** at 15. In other words, the appellees were contending that the second sentence of Article 2, Section 29 "authorizes the lending of aid or credit for a private purpose of a private individual or corporation on a mere vote of the qualified number of voters." ***Id.***

In concluding "that the requirement that the purpose be corporate [or public] pervades the entire provision," the court cited case law defining the purpose of that second sentence referring to an election:

> If the purpose be direct, and be accomplished by direct action of the county or city, as in building, or employing others to build for it, the county's bridge, . . . or the city's waterworks, to be owned by the county or the city, the matter falls under the first part of section 29, no election is required.

*Id.* at 16 (citing ***Berry v. Shelby County***, 201 S.W. 748, 750 (Tenn. 1918)). The court continued as follows:

> Immediately following that, it is stated that even if a direct, as well as an indirect, purpose is to be accomplished by a county or city lending its credit to some other and separate entity, or by subscribing to stock therein, then the facts fall within the second provision which requires an election, etc.

*Id*; *see also City of Chattanooga v. Harris*, 442 S.W.2d 602, 607 (Tenn. 1969) (also citing ***Berry v. Shelby County*** and "recogniz[ing] that some expenditures, even though made for a direct public purpose, may because of the manner of carrying out the purpose actually encompass a giving of credit to some outside interest" but holding that in its particular situation, "[t]he city does not work through a grant of credit to some outside instrumentality, and, thus, the plan falls into the class of expenditures which are constitutionally valid without an election being necessary").

The petition in this case is poorly drawn. However, we are not to grade it but rather to decide if it gives minimal notice of the issues raised. We believe it does because we cannot say that in view of this complaint, with attachments, and the substantive law, there is no set of facts which could be introduced into evidence which would constitute a violation of the constitution as against the county official defendant. Therefore, the judgment of the trial court with regard to Defendant Robert Ring is reversed and the case remanded for further proceedings in that court as to that defendant. Tax the costs against Defendant Robert Ring.

_____
WALTER W. BUSSART, JUDGE


CONCUR:



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION



_____
BEN H. CANTRELL, JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

PORTER FREEMAN,             )
                                 )
     Plaintiff/Appellant,     )
                                 )      Appeal No.
                                 )      01-A-01--9705-CH-00237
VS.                       )
                                 )      Williamson Chancery
                                 )      No. 24424
ROBERT RING, COUNTY   )
EXECUTIVE, JERRY SHARBER, )      Affirmed in Part;
MAYOR, and JAMES JOHNSON, )      Reversed in Part;
ADMINISTRATOR,         )      and Remanded
                                 )
     Defendants/Appellees.   )

# **J U D G M E N T**

This cause came on to be heard upon the record on appeal from the Chancery Court of Williamson County, briefs and argument of counsel; upon consideration whereof, this Court is of the opinion that the dismissal order as to Defendant Robert Ring should be reversed. In all other respects we affirm.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and decreed by this Court that the order of Chancellor be affirmed in part and reversed in part. The cause is remanded to the Chancery Court of Williamson County for further proceedings in accordance with this opinion and for the collection of the costs accrued below.

Costs of this appeal are taxed against Defendant Robert Ring, for which execution may issue if necessary.

ENTER _____.

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE

_____
WALTER W. BUSSART, JUDGE