IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2001 Session

# ERNEST F. PHILLIPS v. COUNTY OF ANDERSON, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 99CH7630     William E. Lantrip, Chancellor**

**FILED APRIL 30, 2001**

**No. E2000-01204-COA-R3-CV**

The defendants, Anderson County and the City of Clinton, entered into an agreement to jointly finance the development of an industrial park to be owned and operated by the City. The plaintiff, Ernest F. Phillips, brought this action for declaratory and injunctive relief, alleging that the County's financing of a portion of the industrial park is illegal and unconstitutional and that the defendants violated various statutory requirements for the development of industrial parks. The trial court granted the defendants summary judgment. The plaintiff appeals, arguing: (1) that the County's use of bond proceeds to finance its portion of the industrial park's infrastructure costs constitutes a lending or giving of credit to or in aid of a corporation within the meaning of Article II, Section 29 of the Tennessee Constitution; (2) that the agreement between the County and the City is not legally sufficient under the Industrial Park Act; (3) that the County obtained a statutorily-required certificate of public purpose and necessity by fraud and misrepresentation; and (4) that the County's bond resolutions are fatally defective and call for prohibited expenditures. The City argues (a) that the plaintiff lacks standing to challenge the City's actions and (b) that the plaintiff's appeal is frivolous. We affirm the grant of summary judgment to the defendants but do not find the plaintiff's appeal to be frivolous.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Ernest F. Phillips, Clinton, Tennessee, Pro Se.

David S. Clark, Oak Ridge, Tennessee, for the appellee, Anderson County, Tennessee.

Roger L. Ridenour, Clinton, Tennessee, and John T. Batson, Jr., Knoxville, Tennessee, for the appellee, City of Clinton.

## OPINION

On July 21, 1997, the Anderson County Board of Commissioners ("the Board of Commissioners") authorized Anderson County ("the County") to enter into an agreement with the City of Clinton ("the City") to jointly finance the development of a public works project known as the I-75 Industrial Park ("the industrial park"). The County and the City entered into the authorized agreement on July 24, 1997. The agreement provides that the City had already secured options to purchase property on which it intended to develop the industrial park and that the County desired to share in the cost of the park's development "for the purpose of expanding the economy and tax base of the county." The agreement further provides that the property is to be owned by the City and that the design and construction of the infrastructure are to be "under the exclusive control of the City." The cost of constructing the infrastructure is estimated in the agreement to be approximately $2,500,000. Under the agreement, the County agreed to pay 75% of the cost of the design and construction of the infrastructure, with a maximum liability of $1,875,000. The cost of the infrastructure is to be paid in three phases. The agreement provides that the responsibility for and control of the industrial park's development, including the responsibility of procuring additional funding and determining when each of the phases will be completed, are exclusively vested in the City.

On December 21, 1998, the Board of Commissioners passed three resolutions authorizing the County to finance its portion of the industrial park's infrastructure. The first of these resolutions ("the initial resolution") authorized the County to incur an indebtedness up to $2,200,000 in order to provide funding for the industrial park, as well as other expenditures, collectively referred to as "certain public works projects," and described specifically as follows:

> infrastructure improvements within the County, including road improvements, renovation, expansion, and improvement of the water, sewer, and gas systems of the County, and landfill improvements within the County, the acquisition of all property real and personal appurtenant thereto and connected with such work, and to pay all legal, fiscal, administrative, and engineering costs incident thereto, and costs incident to incurring the Indebtedness....

The caption of the initial resolution erroneously stated that the County was to enter into a loan agreement with the Public Building Authority of *Anderson County*, when in fact the loan agreement was to be between the County and the Public Building Authority of *Montgomery County*.[1]

On December 31, 1998, Anderson County Executive Rex Lynch vetoed the three resolutions. On January 19, 1999, the Board of Commissioners convened for a regularly scheduled meeting. The minutes of that meeting state that "Commissioner Cooper moved to over-ride [sic] Rex Lynch,

---

[1]There is no explanation in the record as to the involvement of a public agency in Montgomery County.

County Executive veto for 2,200,000 sewer resolution recognizing Montgomery County as being correct," presumably an indication that the Board realized that there was an erroneous reference to the Anderson County Public Building Authority in the initial resolution passed on December 21, 1998. The resolution was corrected, and the Board voted to override the County Executive's veto of the three resolutions. After the resolutions were passed, the plaintiff brought this action raising several challenges to the proposed joint venture.[2]

## II.

We first address the propriety of the grant of summary judgment to the City. In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall,* 847 S.W.2d 208, 210-11 (Tenn. 1993).

The party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Id.* at 215. Generally, a defendant seeking summary judgment may meet this burden by: (1) affirmatively negating an essential element of the plaintiff's cause of action, or (2) conclusively establishing an affirmative defense. *Id.* at 215 n. 5. "A conclusory assertion that the nonmoving party has no evidence is clearly insufficient." *Id.* at 215.

Once the moving party satisfies its burden of showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Id.* The nonmoving party cannot simply rely upon its pleadings, but rather must set forth, by affidavits or discovery materials, specific facts showing a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.06; *Byrd,* 847 S.W.2d at 215. The evidence offered by the nonmoving party must be admissible at trial but need not be in admissible form. It must be taken as true. *Byrd,* 847 S.W.2d at 215-16.

The City argued in its motion for summary judgment (1) that the plaintiff lacks standing to sue the City and (2) that the defendants' expenditures on the development of an industrial park are legal and constitutional. The trial court granted summary judgment to the defendants on the basis that the proposed expenditures are proper and specifically declined to address the issue of standing. The City argues on appeal that it is entitled to summary judgment on either or both grounds.

---

[2]After this litigation commenced, the City filed a cross-claim against the County, alleging that the County had failed to make the payments required under the agreement. That litigation is ongoing and is not a subject of this appeal.

A citizen's standing to sue a governmental entity is a threshold issue that should be resolved before addressing the merits of the case. Because suits brought by citizens "burden the conduct of public affairs, a defendant entity or officer should not be obliged to defend on the merits if he is entitled to a dismissal for lack of standing." *Cobb v. Shelby County Bd. of Comm'rs,* 771 S.W.2d 124, 125 (Tenn. 1989). The plaintiff argues that this Court should not address the issue of standing because "the issue was specifically pretermitted below." Our jurisdiction, however, extends not only to those issues addressed by the court below, but also those issues that were raised but pretermitted. *See Smith v. Harriman Util. Bd.,* 26 S.W.3d 879, 887 (Tenn. Ct. App. 2000). Thus, before we address the propriety of summary judgment on the merits of the plaintiff's case, we will address the issue of the plaintiff's standing to sue the City.[3]

"Standing is a judge-made doctrine which has no per se recognition in the rules. It is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action." *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn. 1976). In order for a plaintiff to have standing to challenge the legality of the expenditure of public funds, the plaintiff must satisfy three requirements: (1) taxpayer status; (2) an allegation of a specific illegality in the expenditure of public funds; and (3) prior demand. *Cobb,* 771 S.W.2d at 126. To satisfy the prerequisite of prior demand, a plaintiff must "have notified appropriate officials of the illegality and given them an opportunity to take corrective action short of litigation." *Id.*; *see also Badgett v. Rogers,* 222 Tenn. 374, 381, 436 S.W.2d 292, 295 (1968) (requiring "demand upon public authorities to rectify the alleged wrong prior to the initiation of such action by the citizen and taxpayer"). Failure to make a prior demand is excused only if a demand would have been a "vain formality," *i.e.*, a futile gesture. *Badgett,* 436 S.W.2d at 295.

We find that the plaintiff failed to make a prior demand on the City and that he has failed to show that a demand upon City officials would have been futile. The City's finance director, James A. Cotton, Jr., stated in his affidavit as follows:

> I am aware of the lawsuit Ernest Phillips filed against the City and the County in July of 1999. That lawsuit was the first notice that any city official received from Mr. Phillips complaining about the City's development of the I-75 Industrial Park. *Prior to initiating the lawsuit, Mr. Phillips gave no notification to me or any other city official that he was concerned that the City had done anything illegal or improper in the development of or funding for the development of the I-75 Industrial Park.*

(Emphasis added).

---

[3] The County failed to raise the issue of standing below; therefore, our analysis of this issue is confined solely to the plaintiff's standing or lack thereof as to the City.

The plaintiff argues that he satisfied the requirement of prior demand by sending a letter to the City's mayor, Frank Diggs. In an affidavit, Mayor Diggs acknowledges that he received a letter from the plaintiff on December 10, 1998. The letter, however, is a request by the plaintiff for assistance in locating and inspecting public records pertaining to the industrial park project. We find and hold that the plaintiff's letter to Mayor Diggs does not satisfy the prerequisite of prior demand. The letter is merely a request to inspect public records pertaining to the development of the industrial park; it does not serve to notify the appropriate City officials of the illegal acts of which the plaintiff now complains. The plaintiff argues that, in any event, demand upon Mayor Diggs was a "vain formality." We disagree. The requirement of prior demand is waived only in "very exceptional circumstances...and then only when it appears that one of the accused public officers would have had to take the corrective action or would have been intimately involved in doing so, or would have been seriously embarrassed by the action." *Metropolitan Gov't of Nashville ex rel. Anderson v. Fulton,* 701 S.W.2d 597, 601 (Tenn. 1985). The plaintiff made no such allegations in this case. Thus, we do not find that the requirement of prior demand is excused in this case.

The plaintiff further argues that the requirement of prior demand was satisfied by a letter that he hand delivered to the chairman of the State Building Finance Committee. The plaintiff further alleges that County Executive Lynch "was present in Nashville, Tennessee, on this occasion, [and] was cognizant of the letter and its contents...." This letter, which is included in an appendix to the plaintiff's brief, is not contained in the record. Thus, it should not be considered on this appeal. *See Hunt v. Shaw,* 946 S.W.2d 306, 309 (Tenn. Ct. App. 1996). Even if we did consider the letter, however, we do not find that a letter directed to a state official constitutes notification to City officials of the plaintiff's allegations of the City's wrongdoing. The plaintiff's argument is without merit.

We find that the City successfully set forth facts which, left uncontradicted, establish that there is no genuine issue of material fact and that the City is entitled to a judgment as a matter of law. We further find that the plaintiff has failed to establish a genuine issue of material fact on the issue of standing. Accordingly, we affirm the grant of summary judgment to the City on the basis that the plaintiff lacks standing to challenge the City's actions.

III.

We now review the grant of summary judgment to the County. In arguing that the grant of summary judgment was in error, the plaintiff raises four issues, which we restate as follows:

> 1. Does the County's use of up to $1,875,000 in general obligation bond proceeds to fund its portion of certain infrastructure costs under an agreement with the City to develop an industrial park constitute a lending or giving of credit to or in aid of a corporation, within the meaning of Article II, Section 29 of the Tennessee Constitution?

2. Is the contract between the City and the County legally sufficient under the Industrial Park Act, T.C.A. § 13-16-201 *et seq.*?

3. Did the County obtain a certificate of public purpose and necessity, which is required under the Industrial Park Act, by fraud and misrepresentation?

4. Is the resolution authorizing the County to incur indebtedness to finance certain public works projects fatally defective on its face and call for expenditures that are prohibited under the Local Government Public Obligations Act of 1986, T.C.A. § 9-21-101, *et seq.*?[4]

A.

The plaintiff argues that the County's use of the proceeds from general obligation bonds to fund its portion of the industrial park's infrastructure costs constitutes a lending of public credit to the municipal corporation of the City of Clinton, in violation of Article II, Section 29 of the Tennessee Constitution. Article II, Section 29 provides, in pertinent part, as follows:

> The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for County and Corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation. *But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election.* Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election, and the assent of a like majority.

(Emphasis added).

The plaintiff's argument rests on the assumption that the prohibition against the lending of public credit to "any person, company, association or corporation" without a popular vote includes the lending of public credit to a *municipal* corporation. For the reasons set forth below, we find no merit in the plaintiff's argument.

---

[4]This issue, as stated in the plaintiff's brief, calls into question the validity of all three resolutions passed by the Board of Commissioners. The plaintiff's argument, however, focuses only on the initial resolution; thus, we will confine our discussion to that resolution.

In interpreting a constitutional provision, courts must give its terms their "ordinary and inherent meaning." *Gaskin v. Collins,* 661 S.W.2d 865, 867 (Tenn. 1983). The intent of the drafters at the time of enactment must also be examined. *Eye Clinic, P.C. v. Jackson-Madison County Gen. Hosp.,* 986 S.W.2d 565, 571 (Tenn. Ct. App. 1998). As this Court has stated:

> Since constitutions derive their power and authority from the people, our articulation of constitutional principles must capture the intentions of the persons who ratified the constitution. These intentions are reflected in the words of the constitution itself, rather than our own subjective notions of unexpressed constitutional intent.

*Martin v. Beer Bd.,* 908 S.W.2d 941, 947 (Tenn. Ct. App. 1995) (citation omitted).

The Supreme Court recently examined Article II, Section 29 in *Cleveland Surgery Center, L.P. v. Bradley County Memorial Hospital,* 30 S.W.3d 278 (Tenn. 2000). In that case, the Supreme Court was faced with the issue of whether a quasi-governmental entity such as a county hospital is a "County, City or Town" within the meaning of the subject constitutional provision. In concluding that it was not, the Court construed the terms "County, City or Town" in the context of the circumstances in which the provision was enacted:

> During the early part of the nineteenth century, at the beginning of the industrial revolution and increased westward expansion, railroads and canals were viewed as critical modes of transportation. Because private industry was unable to raise the capital necessary to complete these projects, many states and cities borrowed heavily to finance these improvement and transportation projects and issued bonds to buy stock in private companies or guaranteed loans to private companies. Unfortunately, many of these public-private ventures failed causing the states and cities to lose the tax money they had invested and leaving the states and cities with a burden of debt. As a result of these failed ventures, between the years 1840 and 1855, nineteen states enacted constitutional provisions which limited the ability of state and local governments to incur debt and extend credit to private businesses.
>
> *       *       *
>
> Adoption of constitutional provisions restricting the extension of public credit did not become prevalent in the South until after the Civil War. As a result of the Civil War, most infrastructure in the South had been destroyed including railroads, roadways, canals, and bridges. To rebuild the infrastructure, southern states borrowed money and authorized large bond issues. In addition, Reconstruction

-7-

governments in the South were said to have incurred debt and authorized bond issues for personal gain. When the period of Reconstruction ended, many southern states adopted constitutional provisions limiting the extension of public credit. Tennessee is a clear example of this trend. Prior to 1870, Article II, § 29 consisted of only one sentence, which is currently the first sentence of the section. The second and third sentences of the provision...were adopted as part of the Constitution of 1870 at the end of the Reconstruction government in Tennessee and were aimed at ending the abuses that occurred during Reconstruction.

*Id.* at 282-83 (citations omitted).

Although the issue in the instant case is the meaning of the term "corporation," we nevertheless find the Supreme Court's analysis in *Cleveland Surgery Center* instructive. It is evident from the historical context of Article II, Section 29, that the purpose of this provision was to place limitations upon the power of local governments to extend credit to or otherwise become financially involved in *private enterprises*. This conclusion is further supported by the Supreme Court's decision in *Dodd v. Roane County,* 174 Tenn. 267, 124 S.W.2d 953 (1939). In that case, Roane County issued bonds to aid the City of Harriman in building a city hospital. *Id.* at 954. The plaintiffs challenged the constitutionality of the County's actions under Article II, Section 29. *Id.* at 955. In so doing, the plaintiffs cited *Berry v. Shelby County,* 139 Tenn. 532, 201 S.W. 748 (1918), in which the Supreme Court held that the lending of public aid to a private college was unconstitutional. *Id.* The Supreme Court rejected the plaintiffs' argument, holding that the joint enterprise undertaken by the city and the county was constitutional. *Id.* In so holding, the Court distinguished cases such as *Berry* on the basis that those cases involved the giving of public credit of a county or city to *private* corporations; the Court noted that "[n]o such question is presented here." *Id.*

Based upon the foregoing, we find and hold that a municipal corporation such as the City of Clinton is not a "corporation" within the meaning of Article II, Section 29. Accordingly, the County's actions do not constitute a giving of public credit to a corporation within the meaning of that provision. The plaintiff's argument as to this issue is without merit.

B.

The plaintiff next contends that the agreement executed by the County and the City is not legally sufficient under the Industrial Park Act, T.C.A. § 13-16-201, *et seq.* (1999), which provides, in pertinent part, as follows:

The powers conferred upon municipalities under [the Industrial Park Act] may be exercised by two (2) or more municipalities acting jointly, in which event *the governing bodies of the municipalities*

> *acting jointly shall provide by contract the manner of development, operation and maintenance of industrial parks,* or the powers may be delegated by resolution to a joint commission or board, the composition, terms of office, appointment, and compensation of same to be fixed by agreement of the governing bodies of such municipalities acting jointly.

T.C.A. § 13-16-206 (Emphasis added). The plaintiff argues that the agreement is insufficient in that it fails to "provide...the manner of development, operation and maintenance" of the industrial park. We disagree.

The agreement executed by the County and the City explicitly provides that the City shall own the property and shall have "exclusive control" of the design and construction of the park's infrastructure. The agreement further provides that the City shall be "exclusively vested" with the responsibility for the development of the park. It is clear from this agreement the parties intend that the City is to be solely responsible for the "development, operation and maintenance" of the industrial park. We therefore find that the agreement sufficiently provides for "the manner of development, operation and maintenance" of the industrial park at issue. The plaintiff's argument to the contrary is without merit.

C.

The plaintiff's next issue concerns the requirement under the Industrial Park Act that a municipality must obtain a certificate of public purpose and necessity before borrowing funds in order to develop an industrial park. *See* T.C.A. § 13-16-207(a)(1)(A). It is undisputed that the County obtained a certificate as required by the Act. The plaintiff contends, however, that the County obtained its certificate "by submitting an application that contained patent illegalities and fraudulent omissions." In making this argument, the plaintiff relies on several documents, most notably the allegedly fraudulent application submitted by the County. The plaintiff, however, has failed to include these documents in the record. Because these documents are not before us, there is nothing in the record to establish the correctness of the plaintiff's position.

D.

Finally, the plaintiff argues that the initial resolution passed by the County Board of Commissioners is fatally defective on its face and calls for expenditures with bond proceeds that are prohibited under the Industrial Park Act. First, the plaintiff complains that the initial resolution was altered "by some unknown party" and that "there is no entry in the records or minutes of [the meetings of the Board of Commissioners] to evidence the correction of the document to read 'The Building Authority of the County of Montgomery.'" Second, the plaintiff argues that the initial resolution is improper because it provides for the use of the bond proceeds for "landfill expenses and related expenses," including attorney's fees, expenditures which the plaintiff contends are prohibited

under the Local Government Public Obligations Act of 1986, T.C.A. § 9-21-101, *et seq.* We will address each of these arguments in turn.

There is no dispute that when the initial resolution was passed on December 21, 1998, the caption erroneously referred to a loan agreement between the County and the Public Building Authority of *Anderson County.* That resolution was vetoed by County Executive Rex Lynch. Before the resolution was passed again on January 19, 1999, it was corrected to refer to the Public Building Authority of *Montgomery County.* We do not find that the correction of this error prior to the resolution's passage is fatally defective to the resolution before us. As it was ultimately adopted, the resolution was accurate. However the resolution read prior to its adoption on January 19, 1999, is of no consequence in this case.

The plaintiff also argues that the initial resolution calls for expenditures not permitted by the Local Government Public Obligations Act of 1986. Specifically, he complains that the resolution calls for the use of bond proceeds for "landfill improvements within the County, the acquisition of all property real and personal appurtenant thereto and connected with such work, and to pay for such legal, fiscal, administrative, and engineering costs incident thereto...."

The Local Government Public Obligations Act of 1986 ("the Act") provides a statutory framework to allow local governments to issue general obligation bonds and revenue bonds to finance the costs of public works projects. *See* T.C.A. §§ 9-21-102 (Supp. 2000). The Act defines "costs" as including "[e]ngineering, architectural, art design services, inspection, *legal and accounting expenses, and relocation expenses in connection with construction of a public works project*...." T.C.A. § 9-21-109(1) (1999) (Emphasis added). "Construction" is defined in the Act as "building, reconstruction, erection, replacement, extension, repairing, betterment, equipment, development, embellishment, *improvement, acquisition by gift, lease, purchase or the exercise of the right of eminent domain, or any one (1) or more or all of the foregoing, including the acquisition of land and of rights in land*...." T.C.A. § 9-21-105(4) (1999) (Emphasis added).

The County candidly admits that it initially intended to use part of the bond proceeds to pay for attorney's fees and fines arising from earlier litigation concerning an abandoned County landfill. Gail Cook, director of accounts and budgets for the County, states by way of affidavit, however, that the County, on the advice of its counsel, no longer intends to use any of the funds to pay for these fees and fines. According to Cook, the County had already paid for these expenses out of its "regular budget." Cook asserts that the County intends to use the bond proceeds only for the industrial park. In granting summary judgment to the County, the trial court noted that the County had stipulated that the bond proceeds would not be used to pay the attorney's fees and fines resulting from the landfill dispute and further admonished that the County "should not use any of the money to be borrowed for any expenses of the old Anderson County landfill or attorneys fees for the landfill...." The plaintiff counters that neither Cook's affidavit nor the trial court's "curative language" changes the language of the resolution.

-10-

First and foremost, we must determine whether the resolution at issue in fact calls for prohibited expenditures. In construing municipal ordinances and resolutions, courts should follow the principles of statutory construction. *Loggins v. Lightner,* 897 S.W.2d 698, 702 (Tenn. Ct. App. 1994). The Supreme Court recently reiterated the primary principles of statutory construction as follows:

> [T]here are a number of principles of statutory construction, among which is the most basic rule of statutory construction: to ascertain and give effect to the intention and purpose of the legislature. However, the court must ascertain the intent without unduly restricting or expanding the statute's coverage beyond its intended scope. The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application.
>
> Courts are not authorized to alter or amend a statute. The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature. Courts must presume that the legislature says in a statute what it means and means in a statute what it says there.

*Mooney v. Sneed,* 30 S.W.3d 304, 306-07 (Tenn. 2000) (citations and internal quotation marks omitted).

The resolution states that a portion of the bond proceeds are to be used for "landfill improvements within the County, the acquisition of all property real and personal appurtenant thereto and connected with such work, and to pay for such legal, fiscal, administrative, and engineering costs incident thereto...." All of these are permitted uses under the Act. Improvements to a landfill may be considered the construction of a public works project. *See* T.C.A. § 9-21-105(21)(A) (1999) (defining "public works project" to include, among other things, "garbage collection and disposal systems"). The acquisition of land and the payment of legal and accounting expenses related to such improvements would also be permissible under the Act. *See* T.C.A. §§ 9-21-105(4), 9-21-109(1). We therefore find no merit in the plaintiff's argument that the resolution calls for prohibited expenditures.[5]

---

[5]While the resolution is facially in compliance with the Act, it is evident that the County, at least initially, planned to use part of these funds for expenses clearly not permitted by the Act, namely, the payment of fines and attorney's fees resulting from litigation. There is nothing in the record, however, to suggest that the County has in fact made these expenditures. On the contrary, the testimony is that these expenditures will not be made out of the funds involved in the current project. The plaintiff, therefore, has failed to demonstrate a justiciable controversy from which he may be granted declaratory relief. *See State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 193 (Tenn.

(continued...)

IV.

Finally, the City raises the issue of whether the plaintiff should be liable for sanctions for bringing a frivolous appeal. T.C.A. § 27-1-122 (2000) provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." ***Davis v. Gulf Ins. Group,*** 546 S.W.2d 583, 586 (Tenn. 1977) (discussing the predecessor of T.C.A. § 27-1-122). An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success. ***Bursack v. Wilson,*** 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); ***Industrial Dev. Bd. v. Hancock,*** 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995).

We do not find that this appeal is so devoid of merit as to warrant the characterization of it as frivolous. Accordingly, we decline to award damages for such an appeal.

V.

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Ernest F. Phillips.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[5](...continued)
2000).